Filed 9/25/14

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MICHAEL ZUCCHET, | D064104 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2012-00083128-CU-MC-CTL) |
| MICHAEL DEAN GALARDI, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Judith F. Hayes, Judge. Reversed and remanded with directions.

Manning & Kass, Ellrod, Ramirez, Trester, Darin L. Wessel and John D. Marino for Defendant and Appellant.

Law Offices of Martin N. Buchanan, Martin N. Buchanan; Coughlan, Semmer, Fitch & Pott, R.J. Coughlan, Jr., Cathleen G. Fitch; Gomez Trial Attorneys and John H. Gomez for Plaintiff and Respondent.

Michael Dean Galardi appeals from the trial court's order denying his special motion to strike under the anti-SLAPP statute (Code of Civ. Proc., § 425.16) in a

malicious prosecution action brought against him by Michael Zucchet.[1]  As we will explain, we conclude that the trial court erred in denying the special motion to strike, and we therefore reverse and remand with directions.

I

FACTUAL AND PROCEDURAL BACKGROUND

Galardi owned several strip clubs in Las Vegas and one in San Diego.[2]  In 2000, the San Diego City Council enacted a "no-touch" ordinance, which banned touching between exotic dancers and patrons in strip clubs.  Galardi hired Lance Malone as a lobbyist to try to obtain repeal of the no-touch ordinance.

Malone's lobbying activities included meeting with and making campaign contributions to members of the San Diego City Council (city council), including Zucchet, who was elected to the city council in November 2002.

In 2001, Malone made campaign contributions to city council member Ralph Inzunza (with money traceable to Galardi), and Malone and Inzunza thereafter discussed a strategy to repeal the no-touch ordinance.

---

[1]  Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.  SLAPP is an acronym for strategic lawsuit against public participation. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1109 & fn. 1 (*Briggs*).)

[2]  Zucchet's malicious prosecution lawsuit against Galardi arises from a federal criminal prosecution against Zucchet that has been the subject of written judicial decisions by both the federal district court and the Ninth Circuit Court of Appeals.  As very little of the evidence from the federal criminal trial appears in the appellate record in this case, our description of the background of the criminal prosecution and the evidence presented at trial will be based, to a large extent, on the federal court decisions.

As part of Inzunza's and Malone's plan to repeal the no-touch ordinance, Inzunza planned to draft a legislative proposal that would appear to tighten the overall restrictions on strip clubs but would also eliminate the no-touch ordinance. Inzunza and Malone arranged to have an ostensibly corrupt police officer (Detective Russ Bristol, who turned out to be an FBI informant) express public support for the plan, and to arrange for imaginary citizens to contact the city council to express interest in the laws governing adult entertainment businesses.

Inzunza advised Malone to contribute to Zucchet's campaign. Malone attempted to make a $6,750 contribution to Zucchet's campaign in 2001, but Zucchet returned the money because it was a political liability to be associated with Galardi's adult entertainment business. In 2002, Malone donated approximately $5,000 to Zucchet's campaign in checks that were *not* traceable to Galardi through one of Galardi's employees who ran a gym (and who also turned out to be an FBI informant).

In February 2003, Zucchet, Inzunza and Malone had a lunch meeting at which Malone explained to Zucchet his goal of repealing the no-touch ordinance. Zucchet told Malone he was not optimistic about the repeal because the police department was unlikely to support it. Malone tried to arrange for Zucchet to meet with Detective Bristol, who would express police support for the repeal, but Zucchet met instead with a police lieutenant who stated that the police supported the no-touch ordinance.

On April 16, 2003, Zucchet had a breakfast meeting with Malone. At the meeting, Malone talked about how he had contributed money during Zucchet's campaign. Zucchet agreed to "do the lifting at the committee level" of a plan that Malone had formulated as

3

to how to get the repeal of the no-touch ordinance on the city council agenda. Specifically, Malone planned to have a concerned citizen appear before the relevant city council committee and ask to change the geographical distance requirements between adult businesses. Once the issue of adult entertainment businesses had been referred to the committee, Detective Bristol would appear to criticize the no-touch rule, and Inzunza would thereafter take action to repeal the no-touch ordinance.

The concerned citizen appeared before the city council on April 30, 2003, to request expansion of the distance requirements between adult businesses, and Zucchet participated in Malone's plan — as promised — by referring the matter for a report by the city attorney. In May 2003, Zucchet learned from the city attorney that the current distance requirements could not be expanded and he accordingly did not refer the matter to the committee.

On May 14, 2003, the government executed a series of search warrants, raiding city hall. In August 2003, a federal grand jury indictment was filed, naming Inzunza, Zucchet, Galardi, Malone and others as defendants in numerous counts of fraud and other crimes, all arising from the scheme to repeal the no-touch ordinance.

Galardi was indicted on 38 separate counts, which, together with another indictment filed in Las Vegas, carried the possibility of a 20-year sentence. In a September 2003 plea agreement, Galardi agreed to enter a guilty plea to a charge of conspiracy to commit wire fraud and agreed to cooperate with the government's prosecution of the other defendants. Galardi was eventually sentenced to 15 months in prison.

4

A superseding indictment was filed against Zucchet, Inzunza, Malone and one other defendant in October 2004. Against Zucchet, the superseding indictment specifically alleged 33 counts of honest services wire fraud in violation of 18 United States Code sections 1343 and 1346, one count of conspiracy to commit honest services wire fraud in violation of 18 United States Code section 371, and three counts of extortion in violation of the Hobbs Act (18 U.S.C. §§ 1951-1952). A jury trial was held in May through July 2005.

Among other things, Galardi testified at trial that (1) in March 2003, he gave Malone $6,000 to divide among Inzunza, Zucchet and one other city council member; and (2) on April 15, 2003, the night before Malone's breakfast meeting with Zucchet, he gave Malone $10,000 with instructions to give it to the city council members. Galardi also testified that Malone's response to Galardi's eventual inquiry about the cash was " 'it had been taken care of' " or " 'it went well.' "[3] The government presented corroborating evidence from another witness — Galardi's domestic partner — who testified that she observed Galardi give cash to Malone on April 15, 2003.

It is undisputed that Galardi did not mention an April 2003 payment to the city council members in his interviews with the government until 2005, and that neither version of the federal indictments mentioned any payments to Zucchet by Galardi or

---

[3]    The appellate record does not contain most of the reporter's transcripts of Galardi's testimony concerning his $6,000 and $10,000 payments to Malone. We therefore base our description of that testimony on statements in the federal district court and Ninth Circuit decisions.

5

Malone in 2003. Galardi testified that he remembered the $10,000 payment for the first time in early 2005 when he saw a credit card bill that triggered his memory. According to Zucchet's declaration and that of his trial attorney, the first time that they learned of Galardi's allegations about the $10,000 payment was during trial.[4]

After an approximate 11-week trial, the jury acquitted Zucchet of 28 of the 37 counts against him. Zucchet moved for a judgment of acquittal or in the alternative for a new trial on the remaining counts.

The district court granted the judgment of acquittal on seven of the counts, all of which related to conduct that occurred no later than March 2003. The district court concluded that insufficient evidence supported a finding that Zucchet engaged in or had knowledge of a quid pro quo during that time period premised on Malone's payment to the city council members, as was required for each of the seven counts.

However, on the remaining two counts of honest services wire fraud — counts 1 and 32, which focused on events occurring in April 2003 — the district court denied a judgment of acquittal because the evidence was sufficient to support a verdict against Zucchet. Specifically, the district court explained that because Galardi testified that he had given Malone $10,000 to give to the city council members in April 2003 on the day before the breakfast meeting where Zucchet agreed to participate in Malone's plan to

---

4      It is unclear from the materials before us whether Galardi testified that Malone's reply to him that the payment had been "taken care of" was also meant to encompass the $6,000 payment. Zucchet does not explicitly base his malicious prosecution complaint on Galardi's testimony about the $6,000, but rather on the testimony about the $10,000.

repeal the no-touch ordinance, and because Galardi testified that Malone had reported back to him that " 'it had been taken care of,' " the evidence "barely suffice[d]" for a reasonable jury to conclude that Zucchet had received some kind of a quid pro quo in April 2003. As the district court explained, "a rational jury could conclude that a cash payment made on April 16, 2003, as suggested by the testimony of Galardi, was the basis that caused Zucchet to knowingly agree to take part in the scheme to refer proposed changes to the no-touch ordinance to the committee."

Although it did not grant a judgment of acquittal on counts 1 and 32, the district court did grant a new trial on those counts. The district court stated that the evidence undermined the court's confidence in the verdicts because (1) Galardi's testimony was not credible concerning the $10,000 payment, in that the circumstances of his recovered memory were suspect; (2) there was no evidence prior to the April 2003 timeframe of any quid pro quo involving Zucchet; (3) Galardi's testimony about the $10,000 payment unfairly surprised Zucchet at trial; and (4) other than Malone's purported statement to Galardi that it " 'went well' " or " 'had been taken care of ' " there was no evidence that some or all of the $10,000 was distributed to Zucchet.

The government appealed the district court's order granting a judgment of acquittal and new trial.[5] The Ninth Circuit affirmed the district court, substantially agreeing with the district court's reasoning.

---

[5]    Galardi has requested that we take judicial notice of portions of the docket in the Ninth Circuit appeal in Zucchet's federal criminal proceeding. Zucchet opposes the request. We deny the request to take judicial notice, as the documents are not relevant to

After the mandate issued on the Ninth Circuit decision in October 2010, the government voluntarily dismissed the two remaining counts against Zucchet.

Zucchet filed this lawsuit against Galardi in October 2012, asserting a single cause of action for malicious prosecution. Zucchet alleged that (1) Galardi falsely told the United States Attorney's Office in January 2005 that he had given $10,000 in cash to Malone to bribe three city council members, including Zucchet; and (2) Galardi falsely testified to that cash bribery during the criminal trial against Zucchet. Zucchet alleged that Galardi "fabricated his claim of a $10,000 payment of a bribe to Zucchet" and that Galardi made the false accusation for the purpose of "obtaining a lighter sentence for crimes he pled guilty to." (Capitalization omitted.)

Galardi filed a special motion to strike the complaint under the anti-SLAPP statute. (§ 425.16.) Galardi argued that the complaint arose from activity protected by the anti-SLAPP statute because it arose from statements he made during Zucchet's trial and to the United States Attorney's Office in preparation for that trial.

Zucchet opposed the motion, arguing that although malicious prosecution actions are typically based on First Amendment activity protected under the anti-SLAPP statute, Galardi's act of giving false information to law enforcement was not protected because it was illegal. Zucchet further argued that even if Galardi's conduct was not protected,

our resolution of the appeal. (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6 [declining to take judicial notice of materials not "necessary, helpful, or relevant"].)

8

Zucchet had satisfied his burden on the second prong of the anti-SLAPP statute to establish a probability of prevailing in his lawsuit.

The trial court granted the special motion to strike, concluding that Galardi had not rebutted the allegation that his conduct was illegal and therefore not protected by the anti-SLAPP statute. The trial court also concluded that Zucchet had established a probability of prevailing on his malicious prosecution claim. As permitted by the anti-SLAPP statute, Galardi filed a notice of appeal from the order denying his special motion to strike. (§ 904.1, subd. (a)(13).)

II

DISCUSSION

A.    *Legal Standards Governing Anti-SLAPP Motions*

The anti-SLAPP statute provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

"The analysis of an anti-SLAPP motion thus involves two steps. 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.] 'Only a cause of action

9

that satisfies *both* prongs of the anti-SLAPP statute — i.e., that arises from protected speech or petitioning *and* lacks even minimal merit — is a SLAPP, subject to being stricken under the statute.' " (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819-820 (*Oasis West*).)  "If the defendant does not demonstrate [the] initial prong, the court should deny the anti-SLAPP motion and need not address the second step." (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1271.)

Section 425.16, subdivision (e) specifies the type of activity protected by the anti-SLAPP statute:  An " 'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)[6]

---

[6]     When the first two subparts of section 425.16, subdivision (e) are at issue (i.e., speech or petitioning before a legislative, executive, judicial or other official proceeding; or statements made in connection with an issue under review or consideration by an official body), the moving party is not required to independently demonstrate that the matter is a " 'public issue' " within the statute's meaning. (*Briggs*, *supra*, 19 Cal.4th at p. 1113.)

"Review of an order granting or denying a motion to strike under section 425.16 is de novo. [Citation.] We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).) However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

B.      *Under the First Prong of the Anti-SLAPP Analysis, Galardi Has Established That the Malicious Prosecution Claim Arises from Activity Protected by the Anti-SLAPP Statute*

We now turn to the issue of whether Galardi met his burden to establish the first prong of the anti-SLAPP inquiry, i.e., that the malicious prosecution action arises from Galardi's acts in furtherance of the right of petition or free speech.

Galardi argues that Zucchet's malicious prosecution claim arises from protected activity in furtherance of Galardi's right of petition or free speech in at least two ways. First, Galardi's testimony in the federal criminal trial is protected as "any . . . oral statement . . . made before a . . . judicial proceeding" (§ 425.16, subd. (e)(1)). Second, Galardi's statement to federal prosecutors as they were preparing for trial is protected as "any . . . oral statement . . . made in connection with an issue under consideration or review by a legislative, executive, or judicial body." (§ 425.16, subd. (e)(2).)

Zucchet does not dispute that, as a general matter, trial testimony and statements made to prosecutors preparing for a trial fall under the definition of activity in furtherance of the right to free speech or petition as defined in the anti-SLAPP statute. Case law

11

confirms that position. (*Dickens v. Provident Life & Accident Ins. Co.* (2004) 117 Cal.App.4th 705, 716 [testimony at a criminal trial and communication with the executive branch of government and its investigators about a potential violation of law preparatory to commencing a criminal prosecution are both protected under the anti-SLAPP statute, so that "a malicious prosecution action predicated upon a defendant's alleged participation in procuring a criminal prosecution against a plaintiff falls within the ambit of the anti-SLAPP statute"]; *Greka Integrated, Inc. v. Lowrey* (2005) 133 Cal.App.4th 1572, 1580 [disclosing information to authorities and in deposition and trial testimony in response to subpoenas is protected by the anti-SLAPP statute]; *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734-735 (*Jarrow*) [observing that "by its terms, [the anti-SLAPP statute] potentially may apply to every malicious prosecution action, because every such action arises from an underlying lawsuit, or petition to the judicial branch"].)

Although not taking issue with the proposition that Galardi's statements about the $10,000 payment were in furtherance of Galardi's right to free speech or petition, Zucchet contends that Galardi's statements are not protected by the anti-SLAPP statute because they were not a *valid* exercise of Galardi's constitutional rights in that they were *illegal*.

In enacting the anti-SLAPP statute, the Legislature stated that its purpose was to address "lawsuits brought primarily to chill the *valid* exercise of the constitutional rights of freedom of speech and petition." (§ 425.16, subd. (a), italics added.) Our Supreme Court has accordingly held that when it is uncontested or otherwise conclusively established that a person acted *illegally* in exercising his or her First Amendment rights,

12

that activity is not a *valid* exercise of rights, and is accordingly not protected under the anti-SLAPP statute. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 320 (*Flatley*).) Specifically, *Flatley* held that "where a defendant brings a motion to strike under section 425.16 based on a claim that the plaintiff's action arises from activity by the defendant in furtherance of the defendant's exercise of protected speech or petition rights, but either the defendant *concedes,* or the evidence *conclusively establishes*, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Flatley*, at p. 320, italics added.) "The rationale is that the defendant cannot make a threshold showing that the illegal conduct falls within the purview of the statute and promotes section 425.16's purpose to 'prevent and deter "lawsuits [referred to as SLAPP's] brought primarily to chill the *valid* exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).)' " (*Flatley*, at p. 316, italics added.)

Our Supreme Court has emphasized that the exception for illegal activity is very narrow and applies only in undisputed cases of illegality. "If . . . a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be resolved within the first step but must be raised by the plaintiff in connection with the plaintiff's burden to show a probability of prevailing on the merits." (*Flatley*, *supra*, 39 Cal.4th at p. 316.) "[T]he showing required to establish conduct illegal as a matter of law — *either through defendant's concession or by uncontroverted and conclusive evidence* — is not the same showing as the plaintiff's second prong showing of probability of prevailing." (*Id*. at

13

p. 320, italics added.)  Applying *Flatley*, subsequent courts have reiterated that it is only in "*rare cases* in which there is uncontroverted and uncontested evidence that establishes the crime as a matter of law."  (*Cross v. Cooper* (2011) 197 Cal.App.4th 357, 386, italics added (*Cross*).)

The rare cases in which the exception for illegal conduct has been applied include (1) a case in which the plaintiff obtained a finding of factual innocence, which conclusively established that the defendant made a false police report, and the defendant did not contest that fact (*Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696, 703); and (2) a case in which the defendant conceded that its acts of vandalism in support of animal rights issues were unlawful (*Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2006) 143 Cal.App.4th 1284, 1296).  In contrast, courts deny anti-SLAPP motions when it is not conclusively established or conceded that unlawful protected activity occurred.  (*Dwight R. v. Christy B.* (2013) 212 Cal.App.4th 697, 712 [defendant did not concede that she engaged in any unlawful activities and there was no uncontroverted evidence that she did so]; *Cross*, *supra*, 197 Cal.App.4th at p. 386 [defendant did not concede criminal conduct and the uncontroverted evidence did not establish a crime as a matter of law].)

Zucchet contends that Galardi acted illegally because it is a crime to give false testimony and make false statements to federal authorities, and this is one of the rare cases in which uncontroverted or conclusive evidence establishes illegality as a matter of law.  As we will explain, Zucchet's position lacks merit.  Galardi has not

14

*conceded* the falsity of his statements, and the evidence does not *conclusively establish* that Galardi made false statements. The falsity of Galardi's statements is still very much in dispute.

First, the record contains no evidence of any concession by Galardi that he made a false statement regarding the $10,000 payment. Zucchet argues that the falsity of Galardi's statement was uncontested because Galardi's moving papers for his special motion to strike in the trial court did not affirmatively *dispute and disprove* the allegation in Zucchet's complaint that Galardi made false statements. However, in establishing that Zucchet's complaint arose from activity protected by the anti-SLAPP statute, it was not Galardi's burden to dispute and disprove the truth of those allegations. (*Jarrow*, *supra*, 31 Cal.4th at p. 740 [a defendant in a malicious prosecution action alleging abusive activity is not required to first establish that his actions are constitutionally protected as a matter of law, as " '[i]f this were the case then the [secondary] inquiry as to whether the plaintiff has established a probability of success would be superfluous' "]; *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 566 [the truth of the plaintiff's allegations that the defendant made false statements should be considered during the second prong analysis in an anti-SLAPP motion, and to do otherwise would be "*placing the cart before the horse*"].) As Galardi did not have the burden to establish the validity of his First Amendment activities as a matter of law under the first prong of the anti-SLAPP inquiry, it would be unreasonable to interpret his failure to expressly *deny* Zucchet's allegations in his moving papers as a tacit concession of illegal activity. Significantly, at the first opportunity after Zucchet suggested in his opposition papers that

15

Galardi had conceded engaging in illegal activity, Galardi argued in his reply papers that the evidence did *not* establish that he made any false statements about the $10,000 payment. On appeal, Galardi has consistently maintained that the evidence does not prove he made a false statement. Thus, this is simply not a case in which the defendant has conceded that he engaged in illegal activity.

Second, uncontested evidence does not establish that Galardi made a false statement about the $10,000 payment. Although the district court and the Ninth Circuit both noted the doubtful credibility of Galardi's testimony regarding the $10,000 payment, that is not the same thing as a conclusive decision that the testimony was false. Indeed, the district court could *not* have conclusively rejected the veracity of Galardi's testimony about the $10,000 payment, as it *denied* the motion for a judgment of acquittal on counts 1 and 32 premised on that testimony, concluding that the testimony reasonably could be relied upon by a jury to conclude that the $10,000 payment occurred. In addition, Galardi's testimony about the $10,000 payment was *corroborated* during the criminal trial by the testimony of his domestic partner, who testified that she observed Galardi giving $10,000 to Malone. Under those circumstances, there is no basis for Zucchet's contention that he has conclusively established the falsity of Galardi's statements about the $10,000 payment with uncontroverted evidence.[7]

_____

[7] We note that in connection with his opposition to the special motion to strike, Zucchet submitted a document that is described as "the statement of . . . Malone presented at the sentencing hearing." The document is a five-page, typed statement signed and initialed by Malone. In the document, Malone states, among other things, that "[c]ontrary to Mr. Galardi's testimony in the San Diego case, he never gave me any cash

16

In sum, because Zucchet's malicious prosecution claim against Galardi is based on Galardi's activities in furtherance of his right to free speech or petition, and this is not the rare case in which the illegality of those activities is uncontested or conclusively established, Galardi has satisfied his burden on the first prong on the anti-SLAPP analysis to show that the complaint arises from activity protected by the anti-SLAPP statute.

C.      *Under the Second Prong of the Anti-SLAPP Analysis, Zucchet Has Not Established a Probability of Prevailing on His Malicious Prosecution Claim*

Having determined that Galardi satisfied his burden under the first prong of the anti-SLAPP analysis, we next consider whether Zucchet has met his burden under the second prong.

"To satisfy the second prong, 'a plaintiff responding to an anti-SLAPP motion must " 'state[] and substantiate[] a legally sufficient claim.' " [Citation.] Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' " (*Oasis West*, *supra*, 51 Cal.4th at p. 820.) In short, a plaintiff must " 'demonstrate[] a probability of prevailing on the

_____

to give to . . . Inzunza or . . . Zucchet[;] nor did I ever give them any cash." In connection with the special motion to strike, Galardi made an evidentiary objection to the document, on which the trial court did not rule. When the trial court does not rule on an evidentiary objection, we deem the objection to have been overruled. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534; *Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1476.) Although Malone's statement is before us as part of the trial court record, it does not provide conclusive and uncontested evidence of the falsity of Galardi's statements about the $10,000 payment. Instead, Malone's statement, together with the testimony of Galardi and his domestic partner about the $10,000 payment, shows that a factual dispute exists on the issue.

claim.' " (*Ibid*.) If a plaintiff meets this burden, the action is allowed to go forward despite the fact that it arises from protected activity. (*Ibid*.)

Our first step in analyzing whether Zucchet has demonstrated a probability of prevailing on his claim is to review the elements required to prove malicious prosecution. "Under the governing authorities, in order to establish a cause of action for malicious prosecution of either a criminal or civil proceeding, a plaintiff must demonstrate 'that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].' " (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871.)

As we will explain, we find the absence of one of these requirements to be dispositive here. Given the undisputed facts, Zucchet cannot as a matter of law establish that the criminal prosecution against him was commenced by, or at the direction of, Galardi.

Although a criminal prosecution normally is commenced through the action of government authorities, a private person may be liable for malicious prosecution under certain circumstances based on his or her role in the criminal proceeding. "The relevant law is clear: 'One may be civilly liable for malicious prosecution without personally signing the complaint initiating the criminal proceeding.' (*Centers v. Dollar Markets* (1950) 99 Cal.App.2d 534, 544.) ' "The test is whether the defendant was actively instrumental in causing the prosecution." ' (*Sullivan v. County of Los Angeles* (1974) 12 Cal.3d 710, 720; see 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 476,

18

p. 702.) 'Cases dealing with actions for malicious prosecution against private persons require that the defendant has at least sought out the police or prosecutorial authorities and falsely reported facts to them indicating that plaintiff has committed a crime.' (*Sullivan v. County of Los Angeles*, *supra*, at p. 720.)" (*Greene v. Bank of America* (2013) 216 Cal.App.4th 454, 463-464.)

The issue here is whether Galardi, as a cooperating codefendant who gave information to prosecutors about the $10,000 payment and then testified about it pursuant to his plea agreement with the government, is in the position of someone who was " 'actively instrumental in causing the prosecution.' " (*Sullivan v. County of Los Angeles*, *supra*, 12 Cal.3d at p. 720.) Specifically, the undisputed evidence is that Galardi spoke with prosecutors in early 2005 about the $10,000 payment after the criminal proceedings had already been ongoing for approximately a year and half, and he testified at Zucchet's trial about the $10,000 payment after he entered into a plea agreement that required him to cooperate in the prosecution of Zucchet and the other remaining defendants. As we will explain, under these circumstances the applicable authorities lead us to conclude that the role Galardi played in Zucchet's prosecution does not give rise to a malicious prosecution claim as a matter of law.

First, although sparse California case law describes the type of conduct that will give rise to a malicious prosecution claim against a private person who assists prosecutors by providing information and testifying in a criminal proceeding, the one case to thoroughly consider the matter indicates that merely giving testimony and responding to law enforcement inquiries in an active criminal proceeding does not

19

constitute malicious prosecution. Specifically, in *Cedars-Sinai Medical Center v. Superior Court* (1988) 206 Cal.App.3d 414 (*Cedars-Sinai*) two witnesses were approached by the authorities as potential witnesses in an arson investigation in which the plaintiff was already a suspect, and they gave testimony at the preliminary hearing against the plaintiff. The court held that the witnesses were not liable for malicious prosecution based on their testimony and statements to police because they did not "instigate, nor were they 'actively instrumental in causing,' the prosecution" of the plaintiff but were merely responding to law enforcement inquiries during an existing investigation. (*Id*. at p. 417.)[8]

Second, following the lead of our Supreme Court in *Zamos v. Stroud* (2004) 32 Cal.4th 958 (*Zamos*), we look to the Restatement Second of Torts (Restatement) for guidance as to the type of conduct that will give rise to a malicious prosecution claim in the context of a criminal prosecution.[9] According to section 655 of the Restatement, "[a]

---

[8]    As *Cedars-Sinai* discussed, *Rupp v. Summerfield* (1958) 161 Cal.App.2d 657, which our Supreme Court cited in *Sullivan v. County of Los Angeles*, *supra*, 12 Cal.3d at page 720, is distinguishable because the defendant had not only *testified* in a criminal proceeding but was the person who " '*initiated the proceeding*' " by making the original false police report that brought the plaintiff to the attention of the police. (*Cedars-Sinai*, *supra*, 206 Cal.App.3d at p. 418, quoting *Rupp*, at p. 663.)

[9]    In *Zamos*, our Supreme Court considered whether the tort of malicious prosecution includes the act of continuing to pursue a civil lawsuit discovered to lack probable cause. (*Zamos*, *supra*, 32 Cal.4th at p. 970.) In its analysis, our Supreme Court relied on section 674 of the Restatement, which identified taking an " 'active part in the initiation, *continuation* or procurement of civil proceedings against another' " without probable cause as a basis for a malicious prosecution claim. (*Zamos*, at p. 967, fn. 6.) *Zamos* also cited Corpus Juris Secundum and American Jurisprudence Second. (*Zamos*, at p. 967, fn. 7.)

20

private person who takes an active part in continuing or procuring the continuation of criminal proceedings initiated by himself or by another is subject to the same liability for malicious prosecution as if he had then initiated the proceedings." (Restatement, § 655, p. 413.) More specifically, the Restatement comments that, "In order that there may be liability under the rule stated in this Section, the defendant must take an active part in their prosecution after learning that there is no probable cause for believing the accused guilty. It is not enough that he appears as a witness against the accused either under subpoena or voluntarily, and thereby aids in the prosecution of the charges which he knows to be groundless. His share in continuing the prosecution must be active, as by insisting upon or urging further prosecution." (Restatement, § 655, com. c, p. 414.)

Other treatises are in agreement that being a witness at trial or providing information pursuant to a law enforcement inquiry in an ongoing investigation is not the type of active participation needed to create liability for malicious prosecution. Corpus Juris Secundum states that "[a]lthough an action for malicious prosecution may have as a primary basis statements made by the defendant under oath, as a general rule, no liability, as for malicious prosecution, attaches merely by reason of testifying as a witness for the prosecution" (54 C.J.S. (2010) Malicious Prosecution, § 20, p. 752, fn. omitted) and that "[m]erely providing false information to law enforcement officials in response to those officials' queries during an ongoing investigation does not amount to instigating a prosecution." (*Id.* § 19, p. 20.) American Jurisprudence Second states that "[g]enerally, one who merely testifies as a witness does not, by that act, institute or continue a prosecution for the purposes of a malicious prosecution claim" (52 Am.Jur.2d (2000)

21

Malicious Prosecution, § 27, p. 157), and that "[i]f a citizen presses the police to apply for a complaint or takes some affirmative action to encourage the prosecution by way of advice or pressure, *as opposed to merely providing information*, he or she is liable for malicious prosecution . . ." (52 Am.Jur.2d, *supra*, Malicious Prosecution, caution, foll. § 23, p. 156, italics added).

Zucchet argues that Galardi was actively instrumental in causing the prosecution, and thus is liable for malicious prosecution, because he offered information and testimony about the $10,000 payment that transformed the nature of the government's case against Zucchet and caused the district court to deny the motion for a judgment of acquittal on counts 1 and 32 and to order a new trial on those counts. Zucchet argues that although Galardi admittedly did not have an active role in *initiating* the government's prosecution against Zucchet, Galardi was an active participant in causing the *continuation* of the prosecution against Zucchet when he introduced the concept of the $10,000 payment into the case. As we will explain, the argument lacks merit.

We begin by pointing out that we have no dispute with several of the predicates to Zucchet's argument. As Zucchet correctly points out, someone may be liable for malicious prosecution for his or her active role in the malicious prosecution of only a *portion* of a proceeding. (See *Singleton v. Perry* (1955) 45 Cal.2d 489, 497 [" ' "it is not necessary that the whole proceeding be utterly groundless" ' "]; *Silas v. Arden* (2012) 213 Cal.App.4th 75, 89 [in the context of a civil lawsuit, a "claim for malicious prosecution need not be addressed to an entire lawsuit"].) Further, the Restatement acknowledges that someone may be liable for maliciously *continuing* a prosecution rather than for

22

maliciously *initiating* a prosecution. (Restatement, § 655, p. 413 [liability for malicious prosecution arises when a person "takes an active part in continuing or procuring the continuation of criminal proceedings initiated by himself or by another"].) Thus, if all of the other requirements for a malicious prosecution claim were present as to Galardi, it would be no bar to the claim that Galardi had a part in advancing only a *portion* of the prosecution (i.e., counts 1 & 32) or that his role came at a *later* stage in the criminal proceedings (i.e., in 2005 when he disclosed the $10,000 payment). In addition, we agree, as a factual matter, that Galardi's testimony about the $10,000 payment *did* transform the focus of the prosecution to some extent, at least insofar as the superseding indictment did not specifically describe the $10,000 payment.[10] It is also clear from a reading of the district court's order that Galardi's testimony about the $10,000 payment was the evidence that caused the district court to grant a new trial on counts 1 and 32 rather than ordering an acquittal on those counts.

However, despite the important role that Galardi's testimony about the $10,000 payment played in the course of Zucchet's prosecution, Galardi's role was always limited to that of a trial witness and someone who provided information to authorities in an ongoing investigation. Indeed, as Zucchet describes the factual basis for his argument, Galardi was "actively involved in causing the continuation of Zucchet's criminal prosecution" because, after entering into a plea agreement, "[Galardi] met with the

---

[10]     We note, however, that Galardi's testimony about the $10,000 payment did not result in any new counts being added to the superseding indictment, as counts 1 and 32 covered honest services fraud occurring in April 2003.

23

prosecution and told them his false story about a $10,000 cash bribe, and then he testified falsely about the bribe when called as a government witness at trial."

As we have explained, to create liability for malicious prosecution it is not enough to provide information to authorities during an ongoing criminal investigation. The person must "take[] some affirmative action to encourage the prosecution by way of advice or pressure, as opposed to merely providing information." (52 Am.Jur.2d, *supra*, Malicious Prosecution, caution, foll. § 23, p. 156.) Further, merely acting as a witness at trial — even a very valuable witness for the prosecution — does not make someone an active participant subject to liability for malicious prosecution. "It is not enough that [the person] appears as a witness against the accused either under subpoena or voluntarily and thereby aids in the prosecution of the charges which he knows to be groundless. His share in continuing the prosecution *must be active, as by insisting upon or urging further prosecution.*" (Restatement, § 655, com. c, p. 414, italics added.) "[A]s a general rule, no liability, as for malicious prosecution, attaches merely by reason of testifying as a witness for the prosecution" (54 C.J.S., *supra*, Malicious Prosecution, § 20, p. 752.)

There is no evidence or allegation that Galardi insisted upon or urged further prosecution of the case against Zucchet, or that he gave advice to the prosecutors or placed pressure on the government to continue the case against Zucchet. Although Galardi's testimony was valuable to the government and had the practical effect of causing the district court to deny the motion for a judgment of acquittal on counts 1 and 32, the significance of Galardi's testimony does not transform Galardi into an active participant who urged that the government continue to prosecute Zucchet.

24

As merely being a witness in a criminal prosecution and giving information in response to a request by law enforcement in an ongoing criminal proceeding, without more, does not give rise to a claim for malicious prosecution, Zucchet's malicious prosecution against Galardi lacks merit. Zucchet has accordingly failed to meet his burden under the second prong of the anti-SLAPP analysis to state and substantiate a legally sufficient claim.[11]

In sum, because Galardi has established his burden under the first prong of the anti-SLAPP statute to establish that Zucchet's malicious prosecution claim arises from protected activity, and Zucchet has not met his burden to make a prima facie case that he has a meritorious malicious prosecution claim against Galardi, we conclude on our de novo review that the trial court erred in denying the special motion to strike under the anti-SLAPP statute.

---

[11] Because we have concluded that Zucchet cannot satisfy the requirement to show that the criminal prosecution was commenced or continued at the direction of Galardi, we need not and do not consider the other elements of malicious prosecution that Galardi contends Zucchet cannot establish, including whether the criminal prosecution terminated in Zucchet's favor and whether Galardi acted without probable cause.

DISPOSITION

The order denying the special motion to strike is reversed, and this matter is remanded with directions for the trial court to enter an order granting the special motion to strike.

IRION, J.

WE CONCUR:

BENKE, Acting P. J.

O'ROURKE, J.