Filed 4/11/22  Crocker v. Blake CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

----

| | |
|---|---|
| CAMERON CROCKER, | C092998 |
| Plaintiff and Respondent, | (Super. Ct. No. 19CV11303) |
| v. | |
| MICHAEL JOSEPH BLAKE, | |
| Defendant and Appellant. | |

During an altercation, appellant Michael Joseph Blake's leg was broken.  In connection with that altercation, criminal charges were filed against respondent Cameron Crocker.  Blake testified at the criminal trial, which ended in Crocker's acquittal.  Later, Crocker sued Blake, raising five causes of action, including slander and malicious prosecution.  Blake filed a special motion to strike under the anti-SLAPP statute (Code

1

Civ. Proc., § 425.16),**1** which the trial court denied.  On appeal, Blake argues the trial court erred by not striking Crocker's slander and malicious prosecution claims.  We agree, and therefore reverse and remand with directions.

BACKGROUND

In July 2017, Crocker and two of his companions were at the Amador County Fair when the group came across a youth wearing a hat indicating his support for then-President Donald Trump.  One of Crocker's companions "made an off-hand comment about Trump not being a good President."  Blake, the youth's father, confronted the man who made the comment, and the two "exchanged words in an increasingly aggressive conversation."  Blake attacked the man, and Crocker and his second companion "attempted to intervene and break up the fight."  But the "scuffling continued," and Blake's "leg was broken."

Later, an Amador County prosecutor charged Crocker and his two companions with assault likely to produce great bodily injury and battery with serious bodily injury (Pen. Code, §§ 245, subd. (a)(4), 243, subd. (d)), and Blake filed a personal injury lawsuit against them.

At Crocker's criminal trial, Blake testified for the prosecution.  On cross-examination by defense counsel, Blake said that *he did not see* Crocker do anything to him, and did not know if Crocker (a) ever tried to separate Blake from Crocker's companion, (b) "actually struck [Blake] with his fist," or (c) kicked Blake.  Nevertheless, Blake maintained that he "was attacked by three people," including Crocker, who "was every bit of the attack as everybody else."  "[I]t was mayhem," Blake explained.  "I was trying to protect my life. . . .  I cannot tell you what I did not see.  And when someone comes from behind you, I don't have -- I just can't."

---

**1**  Further undesignated statutory references are to the Code of Civil Procedure.

The criminal prosecution ended in a complete acquittal for all defendants when the trial court granted a defense motion before the defense presented any evidence.  Later, Blake posted the following text on Facebook, which was "visible" to hundreds of Blake's "Facebook friends":  " 'So go ahead and smack a kid if they are wearing something that you don't agree with.  It's ok now.' "

In August 2019, while Blake's civil action against Crocker was still pending, Crocker filed the instant civil action against Blake, asserting five claims: libel per se, libel per quod, slander, false light, and malicious prosecution.

Blake filed a special motion to strike all of Crocker's claims under the anti-SLAPP statute, arguing that Crocker's claims arose out of Blake's protected activity—"the People's criminal complaint and [Blake's] pending personal injury litigation."  As relevant here, Blake argued (1) Crocker's slander claim be stricken because "evidence in support of [that] cause of action consist[e]d solely of" Blake's testimony at Crocker's criminal trial, and (2) Crocker's malicious prosecution claim be stricken because there was (a) "no . . . evidence to support the contention that the People's case against [Crocker] lacked probable cause" and (b) "no evidence of malice" by Blake.

The trial court denied Blake's special motion to strike.  Regarding slander, the trial court determined that Blake's testimony at Crocker's criminal trial "clearly [met] the definition of protected speech under" the anti-SLAPP statute, but Crocker carried his burden of "demonstrating a probability of prevailing" on the claim.  The trial court also rejected Blake's contention that his trial testimony was "completely privileged" under Civil Code section 47 and California case law.

As for the malicious prosecution claim, the trial court similarly ruled that the cause of action concerned "protected speech by [Blake]," but Crocker carried his burden of demonstrating a probability of prevailing.  The trial court explained that Blake's evidence in support of his motion as to this claim ("one additional . . . page of the trial transcript"

3

of his testimony) was "competing evidence," whose probative value the trial court could not weigh against Crocker's evidence.

Blake timely appealed.

DISCUSSION

I

*Background Legal Principles and Procedures*

*The anti-SLAPP statute and procedures*

Section 425.16 allows for a "special motion to strike" when there is a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) Such claims must be stricken "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (*Ibid.*)

Section 425.16, subdivision (e) explains what kind of activity the statute protects: " '[A]ct in furtherance of a person's right of petition or free speech . . . in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

"When the first two subparts of section 425.16, subdivision (e) are at issue (i.e., speech or petitioning before a legislative, executive, judicial or other official proceeding; or statements made in connection with an issue under review or consideration by an

4

official body), the moving party is not required to independently demonstrate that the matter is a ' "public issue" ' within the statute's meaning." (*Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1476, fn. 6 (*Zucchet*).)

"Thus, ruling on an anti-SLAPP motion involves a two-step procedure. First, the 'moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them.' [Citation.] At this stage, the defendant must make a 'threshold showing' that the challenged claims arise from protected activity. [Citation.]

"Second, if the defendant makes such a showing, the 'burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated.' [Citation.] Without resolving evidentiary conflicts, the court determines 'whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment.' [Citation.] The plaintiff's showing must be based upon admissible evidence. [Citation.] The court 'considers the pleadings and evidentiary submissions of both the plaintiff and the defendant (§ 425.16, subd. (b)(2)); though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.' [Citation.] Thus, the second step of the anti-SLAPP process 'establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation.' [Citation.]" (*Litinsky v. Kaplan* (2019) 40 Cal.App.5th 970, 979-980 (*Litinsky*).)

We review the trial court's ruling de novo. (*Litinsky, supra*, 40 Cal.App.5th at p. 980.)

*The litigation privilege*

"The litigation privilege embodied in Civil Code section 47, subdivision (b) serves broad goals of guaranteeing access to the judicial process, promoting the zealous

representation by counsel of their clients, and reinforcing the traditional function of the trial as the engine for the determination of truth." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 324 (*Flatley*).)

" '[I]n immunizing participants from liability for torts arising from communications made during judicial proceedings, the law places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result.' [Citation.] [¶] To accomplish these objectives, the privilege is 'an "absolute" privilege, and it bars all tort causes of action except a claim of malicious prosecution.' [Citation.] The litigation privilege has been applied in 'numerous cases' involving 'fraudulent communication or perjured testimony.' " (*Flatley, supra*, 39 Cal.4th at p. 322.)

"The litigation privilege is also relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing. (See, e.g., *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 926-927 [where the plaintiff's defamation action was barred by Civil Code section 47, subdivision (b), the plaintiff cannot demonstrate a probability of prevailing under the anti-SLAPP statute]; *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 783-785 [the defendant's prelitigation communication was privileged and trial court therefore did not err in granting motion to strike under the anti-SLAPP statute].)" (*Flatley, supra*, 39 Cal.4th at p. 323.)

II

*Blake's trial testimony was "protected activity" under the anti-SLAPP statute*

To the extent Crocker argues the trial court erred in ruling that Blake's testimony at Crocker's criminal trial fell within section 425.16, subdivision (e)(1), that argument

clearly lacks merit.[2]  (See *Zucchet, supra*, 229 Cal.App.4th at p. 1477 [citing multiple California cases for the proposition that "trial testimony and statements made to prosecutors preparing for a trial fall under the definition of activity in furtherance of the right to free speech or petition as defined in the anti-SLAPP statute"].)  Thus, we agree with the trial court that the merits of Blake's special motion to strike the slander and malicious prosecution claims depend on an analysis of the second step of the anti-SLAPP procedure.

## III

### *Slander*

" 'Slander is a form of defamation (Civ. Code, § 44), consisting of a false and unprivileged *oral* publication (Civ. Code, § 46).  To establish a prima facie case for slander, a plaintiff must demonstrate an oral publication to third persons of specified false matter that has a natural tendency to injure or that causes special damage.' "  (*City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 375-376, italics added.)

### *Additional background*

In his opposition to Blake's special motion to strike the slander claim, Crocker argued that Blake "made statements" to others "when he testified that [Crocker]

---

[2]     On appeal, Crocker insists that his slander claim "is not limited to just what [Blake] stated during the criminal proceeding, but also includes" the statements that Blake posted on Facebook after the criminal trial ended.  Setting aside this apparent change in Crocker's theory of liability, Blake observes correctly that a written Facebook post is not an *oral* publication, and therefore cannot form the basis of a slander claim.  (See Civ. Code, § 46 ["Slander is a false and unprivileged publication, *orally uttered*, and also communications by radio or any mechanical or other means (italics added)"].)

Crocker contends that his malicious prosecution claim concerns "statements made by [Blake] within the criminal proceeding and statements provided by [Blake] to law enforcement."  But, as Blake observes, there is no evidence in the appellate record of Blake's statements to law enforcement.

7

physically attacked him" but "[f]ailed to [u]se [r]easonable [c]are in [d]etermining" the truth of that testimony, as Blake "admitted in his trial testimony that he did not see [Crocker] strike him." As evidentiary support, Crocker cited to seven lines of testimony in a transcript of Blake's testimony at the criminal trial, and attached the page as an exhibit to his opposition.

*Analysis*

The litigation privilege—which " 'bars all tort causes of action except a claim of malicious prosecution' "—bars Crocker's slander claim against Blake that arises out of Blake's trial testimony. (*Flatley, supra*, 39 Cal.4th at p. 322 [the litigation privilege "is 'an "absolute" privilege,' " that "has been applied in 'numerous cases' involving . . . 'perjured testimony' "].) The trial court erred in ruling otherwise.

In rejecting Blake's argument that the litigation privilege applied, the trial court determined that our Supreme Court in *Flatley* "did not find the privilege to be so absolute." The trial court quoted *Flatley*: " '[W]e reject [the] contention that, because some forms of illegal litigation-related activity may be privileged under the litigation privilege, that activity is necessarily protected under the anti-SLAPP statute.' "

But the trial court did not explain in its written order why it determined that Blake's trial testimony falls into the category of "some forms" of litigation-related activity *not* entitled to the anti-SLAPP statute's protection. And we see no viable theory under which the litigation privilege does *not* bar the claim.

*Flatley* concerned a demand letter by an attorney to a well-known entertainer, which letter was "conclusively demonstrated to have been illegal as a matter of law" (because it was extortionate)—a proposition the attorney did not dispute in our Supreme Court. (*Flatley, supra*, 39 Cal.4th at pp. 305, 320.) "Assuming without deciding that the *litigation privilege* may apply to such threats," our Supreme Court concluded that such threats "are nonetheless *not protected under the anti-SLAPP statute* because the litigation privilege and the anti-SLAPP statute are substantively different statutes that serve quite

8

different purposes, and it is not consistent with the language or the purpose of the anti-SLAPP statute to protect such threats." (*Id.* at p. 322, italics added.)

Here, it has not been conclusively demonstrated that Blake's testimony was "illegal as a matter of law," and Blake has never conceded that he testified falsely. Accordingly, *Flatley*'s "illegal activity" holding is inapplicable, and the trial court erred by relying on it to reject Blake's argument that the litigation privilege applies. (Cf. *Zucchet, supra*, 229 Cal.App.4th at p. 1478 ["Our Supreme Court has emphasized that the exception for illegal activity is very narrow and applies only in undisputed cases of illegality"].)

The litigation privilege gives Blake a substantive defense that Crocker must overcome to demonstrate a probability of prevailing on his slander claim (under the second step of the anti-SLAPP procedure). (*Flatley, supra*, 39 Cal.4th at p. 323.) Crocker has not overcome Blake's substantive defense, and the trial court erred by failing to strike the slander claim.[3]

IV

*Malicious Prosecution*

"To establish a cause of action for malicious prosecution, 'a plaintiff must demonstrate "that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations]." ' [Citations.] Our Supreme Court has explained that '[a]lthough the

---

[3] Crocker presents an unpersuasive policy argument in support of his position. He contends that if we agree with Blake's position that statements given in a judicial proceeding are immune from all tort causes of action except a claim for malicious prosecution, such a state of affairs "would give rise to people using the judicial forum to propagate defamatory statements without civil or criminal repercussions." Not so. The litigation privilege does not bar criminal prosecution for perjury. (See *Silberg v. Anderson* (1990) 50 Cal.3d 205, 218-219.)

9

malicious prosecution tort has ancient roots, courts have long recognized that the tort has the potential to impose an undue "chilling effect" on the ordinary citizen's willingness to report criminal conduct or to bring a civil dispute to court, and, as a consequence, the tort has traditionally been regarded as a disfavored cause of action.' " (*Litinsky, supra*, 40 Cal.App.5th at p. 980.)

Regarding the first element of this tort, "merely giving testimony and responding to law enforcement inquiries in an active criminal proceeding does not constitute malicious prosecution." (*Zucchet, supra*, 229 Cal.App.4th at p. 1482.) " '[T]he defendant must take an active part in the[ ] prosecution after learning that there is no probable cause for believing the accused guilty.' " (*Id.* at p. 1483.)

Regarding the second element, "[w]hen . . . the claim of malicious prosecution is based upon initiation of a criminal prosecution, the question of probable cause is whether it was objectively reasonable for the defendant . . . to suspect the plaintiff . . . had committed a crime." (*Ecker v. Raging Waters Group, Inc.* (2001) 87 Cal.App.4th 1320, 1330.) This objective inquiry " 'calls on the trial court to . . . determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable.' " (*Litinsky, supra*, 40 Cal.App.5th at p. 981.)

*Analysis*

Here, the pleadings and evidentiary submissions of both parties (§ 425.16, subd. (b)(2)) reflect it is undisputed that Blake testified that he did not see Crocker attack him, and did not know if Crocker attacked him or ever tried to separate Blake from Crocker's companion. Crocker maintains on appeal that these undisputed facts "clearly show" it was unreasonable for Blake to suspect Crocker committed a crime. Blake "knew or had reason to know that [Crocker] did not harm him (i.e., cause the breaking of his leg), but continued to" assist in Crocker's prosecution, Crocker asserts.

But another undisputed fact illuminates why it *was* objectively reasonable for Blake to *suspect* Crocker committed a crime: Blake was attacked *from behind*. This

10

explains why Blake did not see who broke his leg, and why it was objectively reasonable for Blake to suspect that *Crocker* was the person who broke his leg.

This is so, because (a) accepting as true the intimation in Crocker's complaint that Blake initiated the altercation by attacking Crocker's companion, and (b) accepting as true the assertion in Crocker's complaint that Crocker "attempted to end the fighting by separating" Blake from Crocker's companion, (c) Blake nevertheless reasonably could have believed that (d) his leg was broken because Crocker used excessive force in trying to "end the fighting," (e) making Crocker criminally liable for assault.  (Cf. *People v. Lloyd* (2015) 236 Cal.App.4th 49, 52, 63 [defendant in assault prosecution entitled to "not guilty" verdict if there is reasonable doubt defendant acted in self-defense or defense of another]; CALCRIM No. 3470 [defendant acts in lawful defense of another if, inter alia, the "defendant used no more force than was reasonably necessary to defend against" the imminent danger that someone else would suffer bodily injury].)

One of the trial court's mistakes in analyzing this claim was the rejection of Blake's evidence (an additional page of trial testimony, reflecting Blake's testimony that he was attacked from behind) as "competing evidence" that the trial court could not "weigh the probative value of."  Blake's testimony that he was attacked from behind was not disputed.  Accordingly, there was no "competing evidence" on that point, and the operative question was whether—on the basis of the facts known to Blake—it was objectively reasonable for him to suspect that Crocker used excessive force in trying to end the fight between Blake and Crocker's companion.  (See *Litinsky, supra*, 40 Cal.App.5th at p. 980 [under a " 'summary-judgment-like procedure,' " " 'the court does not *weigh* the credibility or comparative probative strength of *competing* evidence,' " but " 'it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim,' " first italics in original, second italics added]; *id.* at p. 981

11

[analyzing whether probable cause existed for a prior legal action requires an objective determination *on the basis of the facts known to the defendant*].)

Because Blake knew that (a) he was attacked from behind during an altercation, (b) Crocker was a member of the group of (three) people with which Blake had the altercation, and (c) Blake's leg was broken during the altercation, Blake had an objectively reasonable basis to suspect that Crocker assaulted him, even though he did not see Crocker assault him.

Accordingly, "because [Blake] has established his burden under the first prong of the anti-SLAPP statute to establish that [Crocker's] malicious prosecution claim arises from protected activity, and [Crocker] has not met his burden to make a prima facie case that he has a meritorious malicious prosecution claim against [Blake], we conclude on our de novo review that the trial court erred in denying the special motion to strike under the anti-SLAPP statute."**4** (*Zucchet, supra*, 229 Cal.App.4th at p. 1486.)

---

**4**     Given our conclusion that Crocker has not met his burden to make a prima facie case as to the second element of a malicious prosecution claim, we need not address Blake's contentions regarding the other two elements of the claim. (See *Zucchet, supra*, 229 Cal.App.4th at p. 1481 [plaintiff's failure to meet his burden on a single element of a claim sufficient for moving defendant in anti-SLAPP motion to prevail].)

    Indeed, though Blake suggests in his reply brief that Crocker failed to meet his burden on the *first* element of the tort of malicious prosecution, Blake did not raise this argument in the trial court or in his opening brief. Accordingly, that argument is forfeited. (See *Flatley, supra*, 39 Cal.4th at p. 321, fn. 10 [moving defendant in anti-SLAPP motion who invoked § 425.16, subd. (e)(1) & (e)(4), "may not change his theory of the case for the first time on appeal" by invoking § 425.16, subd. (e)(2)]; *Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066 [" ' "points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before" ' "].)

12

## DISPOSITION

The order denying the special motion to strike is reversed, and this matter is remanded with directions for the trial court to enter an order granting the special motion to strike as to the slander and malicious prosecution claims. Costs on appeal are awarded to Blake. (Cal. Rules of Court, rule 8.728(a)(1) & (2).)

_____/s/_____
RAYE, P. J.

We concur:

_____/s/_____
BLEASE, J.

_____/s/_____
KRAUSE, J.

13