Filed 10/28/21  Murray v. Powers CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| SEAN MURRAY, Plaintiff and Respondent, v. CODY POWERS, Defendant and Appellant. | D078435 (Super. Ct. No. 37-2019-00023102-CU-DF-NC) |


APPEAL from an order of the Superior Court of San Diego County, Earl H. Maas, III, Judge.  Affirmed.

Rowe Mullen, Martin J. Mullen and James S. Brasher for Defendant and Appellant.

James W. Denison for Plaintiff and Respondent.

INTRODUCTION

Cody Powers appeals the denial of his special motion to strike filed under Code of Civil Procedure section 425.16,[1] commonly known as the anti-SLAPP (strategic lawsuit against public participation) statute.

Powers was in a romantic triangle with Melodee Eva-Zacchara and Sean Murray. On August 8, 2017, Eva-Zacchara and Murray had a domestic dispute. Powers reported the incident to the Oceanside Police Department.

Eva-Zacchara and Murray were never able to agree about what happened on August 8. Eva-Zacchara claimed Murray had assaulted her, which Murray disputed. However, when she sent Murray what appeared to be a police report supporting her version of events, Murray grew concerned. The police report referred to Murray as a "suspect," indicated his crimes had been substantiated, and appeared to have been circulated to other law enforcement agencies. Eva-Zacchara made similar claims to others about Murray's criminal behavior and law enforcement entanglements.

These claims harmed Murray's personal and work relationships and caused him to abandon his life in California. After Murray relocated to another state, he contacted the Oceanside Police Department. He then learned the police report he received from Eva-Zacchara had been altered to support her version of events. The real police report concluded "no assault could be substantiated."

Murray sued Eva-Zacchara and Powers for defamation and related torts. He alleged that Powers, motivated by his continued romantic interest in Eva-Zacchara, had assisted her in altering the official police report and disseminating its false contents to others. Powers then brought a motion to

---

[1]    Unspecified statutory references are to the Code of Civil Procedure.

strike Murray's complaint.  The trial court denied Powers's motion to strike, concluding he failed to establish that the claims against him arose from activities protected by the anti-SLAPP statute.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*Relevant Facts*[2]

On August 8, 2017, Eva-Zacchara told Murray she wanted to end their months-long romantic relationship.  After she gathered her possessions, Murray convinced her to let him give her a ride to the Oceanside train station.  Eva-Zacchara and Murray dispute what happened during this drive.  Eva-Zacchara claims Murray maneuvered his car erratically, moved his car when stopped at stoplights so she was unable to get out, and slapped her when she tried to call 911.  Murray denies that these things occurred.

According to Murray, by the time they were near the Oceanside train station, Eva-Zacchara appeared to have fallen asleep.  He decided to take Eva-Zacchara to the home of her former fiancé, Powers, because Eva-Zacchara was planning to live with Powers.  Powers had been romantically involved with Eva-Zacchara until July 2017 but was not aware she had also been dating Murray.

---

[2]    Our factual summary reflects the relevant standard of review, which is de novo.  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).)  "We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.'  [Citation.]  However, we neither 'weigh credibility [nor] compare the weight of the evidence.  Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' " (*Ibid.*)

When Murray pulled up to Powers's house, Eva-Zacchara ran to the front door yelling "help me, help me," and told Powers to call 911. Powers did so. An officer of the Oceanside Police Department came to Powers's house later that evening and interviewed Eva-Zacchara.

When Murray dropped Eva-Zacchara off at Powers's house, he put her belongings on the sidewalk. Eva-Zacchara and Murray dispute whether her purse was among these items. On August 29, 2017, Powers called the Oceanside Police Department and reported that Murray had stolen his credit cards, which had been in Eva-Zacchara's purse.

Murray and Eva-Zacchara kept seeing each other after August 8, although the events of that day remained a point of contention. Eva-Zacchara claimed Murray had assaulted and abducted her and that Powers's neighbors had witnessed these crimes. She told Murray he was being investigated by the San Diego County District Attorney's office and that as part of the investigation his phone was being "wiretapped."

In December 2017, Eva-Zacchara texted photos of a police report to Murray. This police report appeared to corroborate Eva-Zacchara's account that the alleged "assault and kidnapping/abduction" had been substantiated through witness statements and that Murray was "suspect[ed]" by law enforcement of these crimes but had not yet been "arrested." The report appeared to have been circulated to various law enforcement agencies.

Eva-Zacchara made similar claims to other persons. In August 2018, she sent an email message to acquaintances of Murray in which she stated a " 'diagnosed paranoid schizophrenic and software developer' " was "cyber-stalking her," that " '[s]everal police reports ha[d] been filed' " and his " 'phone was tapped for a while by the District Attorney here[.]' " Eva-Zacchara also sent text messages and voicemails to a close friend of Murray's

4

in which she claimed Murray " ' was going to go to prison for grand theft, abduction, and battery (he left marks on me)' " and was " 'now under gov [sic] surveillance.' "

According to Murray, although he did not believe he had committed the crimes he had been accused of by Eva-Zacchara, her claims had a "substantial impact" on his relationships with friends, colleagues, and employers. Murray left his career in California and moved to Massachusetts to "begin his professional and personal life anew."

In February 2019, Murray contacted the Oceanside Police Department to find out the status of the investigation documented in the police report Eva-Zacchara had sent him in December 2017. It was then that Murray learned there was no ongoing investigation nor any warrant for his arrest. Sergeant Scott Garrett sent Murray the official police report pertaining to the events of August 8. The official police report said "no assault could be substantiated," did not identify Murray as a suspect, contained no reference to interviewing neighbors, and did not appear to have been circulated to any other law enforcement agency.

## II.

### *Trial Court Proceedings*

A.    *Murray's Defamation Action*

In May 2019, Murray sued Eva-Zacchara and Powers. In the operative first amended complaint (complaint), Murray asserts causes of action for defamation, interference with contract, interference with prospective economic advantage, and intentional infliction of emotional distress.

The complaint includes a background section that summarizes the history of Eva-Zacchara and Murray's romantic relationship and breakup, the events of August 8, 2017, and Powers's phone calls to the police on August 8 and August 29, 2017.

The complaint specifies that "[a]t the center of this dispute is a police report, or reports" relating to the events of August 8. It alleges that Eva-Zacchara used a "forged" police report to legitimize her claims that Murray had assaulted and abducted her, and that she referred to this "forged" report in "an email blast she sent to her and [Murray's] mutual friends and acquaintances[.]" It further alleges that "Eva-Zacchara's false accusations and use of the forged police report to support her slanderous story has caused Plaintiff Murray harm in multiple forms, including harm to his reputation among friends and colleagues, interference with his employment, and frustration and emotional turmoil."

As to Powers, the complaint states, "Murray is informed and believes and on that basis alleges that . . . [Powers], Eva-Zacchara's former fiancé, provided substantial assistance in Eva-Zacchara's dissemination of the false accusations and forgery of the police report." It further alleges that the basis for Murray's belief that Powers provided such assistance is that "the issuance of a police report had been at the insistence of defendant Powers, who . . . continued to have a romantic interest in Eva-Zacchara."

B.     *Anti-SLAPP Motion to Strike*

On May 27, 2020, Powers filed a special motion to strike the complaint under the anti-SLAPP statute, Code of Civil Procedure section 425.16. This statute authorizes a special motion to strike a claim arising from any act in furtherance of the moving party's " 'right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' " (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*).)

A special motion to strike brought pursuant to section 425.16 is evaluated in two steps. At the first step, the defendant must establish that his " 'conduct by which plaintiff claims to have been injured falls within one

6

of the four categories described in subdivision (e).' " (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1073 (*Park*).) These four categories are: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

If the defendant carries this initial burden, "the plaintiff must then demonstrate its claims have at least 'minimal merit.' " (*Park, supra*, 2 Cal.5th at p. 1061.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

The memorandum of points and authorities filed in support of Powers's motion to strike did not indicate which of the four subdivision (e) categories Powers claimed were implicated by the claims against him. His notice of motion did state that the motion was "made on the grounds that each of the causes of action in the [complaint] arise out of Mr. Powers'[s] exercise of his right to free speech under the State and Federal Constitutions in a public forum, in connection with an issue of public interest," although without citing the corresponding statutory subdivision (§ 425.16, subd. (e)(3)).

7

Powers asked the court to strike the causes of action against him on the ground that they were all "derive[d] from" his communications with police on August 8 and 29, 2017, and thus "necessarily arise from protected activity." Powers acknowledged that the complaint stated Murray had been shown "a forged police report," but he argued the allegations he had assisted with the forgery were "vague." Powers characterized the complaint as though it alleged that his *phone calls to* the police were the alleged "false police reports." Powers then argued Murray would not be able to establish conclusively that these communications were "false" as required to avoid anti-SLAPP protections based on assertedly illegal conduct. Powers also argued that Murray would be unable to establish that his claims had the minimal merit necessary to proceed.

Powers filed a declaration in which he averred, among other things, that he made no false statements to the police, "did not forge any police report or assist [Eva-Zacchara] in forging any police report," and "did not disseminate false accusations against Plaintiff."

Powers also filed a declaration by Eva-Zacchara which had been submitted in a separate proceeding[3] in support of a request for a domestic violence restraining order against Murray. Eva-Zacchara described in detail her views about Murray's personal failings, presented her version of the events of August 8, and recounted conflicts that had played out between them on various social media platforms. She did not discuss in this declaration the alleged alteration of the police report or her August 2018 "email blast" to Murray's acquaintances.

---

[3] *Melodee Eva-Zacchara Levy v. Sean Matthew Murray*, San Diego Superior Court Case No. 19FDV03142N. The appellate record does not reveal the outcome of this proceeding.

8

C.    *Murray's Opposition to the Anti-SLAPP Motion*

Murray's opposition to the anti-SLAPP motion opened by asking, "Was the *forgery* of a police report in this case — not calls to the police or the real police report — an exercise of a constitutional right that is protected by California's anti-SLAPP law? The simple, and one would think obvious, answer is no."

Murray argued that Powers, by focusing on his phone calls to the police, "insist[ed] on attacking allegations Murray did not make." Murray argued Powers ignored that the complaint was based on Powers's role in "taking a real police report and altering it" and had failed to address whether the conduct alleged against him met the requirements of section 425.16, subdivisions (e)(1) through (e)(4). Murray claimed that altering an official police report, and republishing it to others, are not protected speech activities under any of these subdivisions. He also asserted that altering a police report is unprotected by the anti-SLAPP law because it is illegal, specifically because it violates Penal Code section 115.3.[4]

In support of his opposition, Murray filed a declaration to which he attached copies of the official police report he received from Sergeant Garrett in February 2019, and the altered report he received from Eva-Zacchara in December 2017. We describe the official police report and the altered report below.

---

[4]    Under Penal Code section 115.3, "[a]ny person who alters a certified copy of an official record, or knowingly furnishes an altered certified copy of an official record, of this state, including the executive, legislative, and judicial branches thereof, or of any city, county, city and county, district, or political subdivision thereof, is guilty of a misdemeanor."

9

1. *The Official Police Report*

The report Murray received from Sergeant Garrett in February 2019 was Oceanside Police Department Report No. 17012793.1, a three-page document authored by Officer Matthew Ephron on "9/26/2017 [at] 15:53:47" and reviewed by Officer Jeffrey Brandt on "09/27/2017 [at] 02:50:24." Under "Primary Charge," it stated "981153 - ZZ - MISCELLANEOUS REPORTS - 153."

This report indicated there had been an incident on August 8, 2017 at a single detached home in Oceanside. It identified no suspects or witnesses but instead characterized 27-year-old Murray, 37-year-old Eva-Zacchara, and 34-year-old Powers as "[o]ther [l]ay [w]itness[es]" of the incident.

The narrative portion of the report stated that "[o]n 8/8/17, at approximately 2027 hours, [Officer Ephron] responded to a radio call" which "was cleared with no prosecution desired, by Melody [Eva-Zacchara] *and no assault could be substantiated.*" (Italics added.) It continued: "On 8/29/17 at approximately 2052 hours the same reporting party, Cody Powers, requested police contact reference [sic] the incident on 8/8/17." It stated that Powers had "requested a report reference two stolen credit/debit cards which were taken on the night of 8/8/17," and Powers "[a]dditionally . . . wanted the fact that Murr[a]y revved his engine outside of his residence in what Powers believed to be a ploy for him to come outside and get into a physical altercation."

This police report identified no property loss and contained no indication it was circulated to any other law enforcement agency.[5]

_____

5       Murray also filed a request for judicial notice of a declaration by Sergeant Garrett filed in support of Murray's opposition to Eva-Zacchara's request for a domestic violence restraining order in San Diego Superior Court Case No. 19FDV03142N. (See fn. 3, *ante.*) Powers objected that taking

## 2.	*The Altered Police Report*

Murray averred that he received the "fake report" from Eva-Zacchara in December 2017 as photos transmitted via text message. This report was identical to the official report (including stating it was authored by Officer Matthew Ephron on "9/26/2017 [at] 15:53:47" and reviewed by Officer Jeffrey Brandt on "09/27/2017 [at] 02:50:24") in all but four respects.

First, the narrative section of the altered report had been completely replaced. The narrative of the altered report stated that "[o]n 8/8/17, at approximately 2027 hours, [Officer Ephron] responded to a radio call" which "was cleared with no prosecution desired by Melody [Eva-Zacchara] *although assault and kidnapping/abduction substantiated by statements*." (Italics added.) It continued: "On 8/14/17 at approximately 1730, [i]nterviewed *neighbors reference the incident 8/8/17, wishing to stay anonymous.* Neighbors, one of which identified Murray's vehicle, recalled hearing yelling, honking, engine revving, loud tire noise. *One neighbor recalled what appeared to be a physical altercation and [Eva-Zacchara] struggling to get her things from a vehicle.*" (Italics added.) It further stated, "On 8/29/17 at approximately 2052 hours *I contacted* the same reporting party, *Cody Powers* reference the incident 8/8/17, *[r]eviewed timeline and learned that it appeared*

judicial notice of a court record is not the same as accepting the truth of its contents. The trial court overruled Powers's objections. On appeal, Powers argues this evidentiary ruling was erroneous. Although the trial court did not discuss or rely on the contents of Sergeant Garrett's declaration, meaning any error in its evidentiary ruling was not prejudicial, we agree with Powers that when a court takes judicial notice of a document it does not accept the truth of facts asserted within it. (See, e.g., *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882.) Accordingly, we do not summarize the contents of this declaration. For the same reason, we do not set forth the contents of a second declaration from Eva-Zacchara that was also the subject of Murray's request for judicial notice.

11

*that purpose of noise was Murray wanted Powers to come outside of home.*"
(Italics added.) It further stated that Eva-Zacchara's "purse was also stolen
during incident because credit cards linked to Powers account were reported
stolen that were inside purse. . . . The purse and cards had not been
recovered at the time of this report but have been canceled by Powers."

Second, the altered report characterized Murray as a "[s]uspect" rather
than a "[w]itness." It stated there was "[n]o . . . arrest at time of this report
unless directed by victims."

Third, the altered report reflected property loss of "Purse (contents and
value unknown), credit cards valued at over $15,000."

Fourth, at the end of the altered report, under the abbreviation "CC:"
(meaning "copies" or "carbon copies"), the following entities were listed: "CA
OAG, Pennsylvania AG, CA DOJ Domestic Violence Task Force, CA DOJ
Bureau of Firearms, LA/ Orange/ San Diego County Sheriff and LA, Mission
Viejo, Carlsbad, Encinitas, Vista, San Marcos, and San Diego City Police
Departments."

D. *The Trial Court's Ruling*

The trial court denied the motion to strike, concluding Powers failed to
meet his initial burden of establishing that the complaint arose from an act
in furtherance of his right to free speech.

The trial court interpreted the motion as being based on section 425.16,
subdivision (e)(3). It found that while Powers claimed the allegations against
him arose from making a "false police report," the complaint "does not so
allege and rather is based on [Murray's] contention that . . . [Eva-Zacchara]
. . . forged or altered actual police reports[.]" The court further found that
while the complaint alleged that Powers had made "two reports to the police,"
"nowhere in the [complaint] is it alleged that those reports were false nor is
the [complaint] based on the making of false police reports. Rather, . . . the

12

defamation occurred when Eva-Zacchara took the police reports, altered/forged them, and then used the altered/forged reports to claim Plaintiff was stalking her [and] was deemed by authorities to be a potential cyber terrorist. [Citation.] As for [Powers's] alleged role in the defamation, the [complaint] simply alleges that the defamatory statements were made 'with the assistance of defendant Powers.' [Citation.] How [Powers] allegedly assisted Eva-Zacchara is not pled."

The trial court ruled that Powers failed to establish that to the extent he was alleged to have assisted Eva-Zacchara in the alteration of the police report and the sending of emails to other persons referencing the falsified report, "that such defamatory statements were made in a public forum or concern a public issue." Having determined that Powers failed to meet his burden of proof on the first anti-SLAPP prong, the court did not reach the second prong. Powers timely appealed the order denying his anti-SLAPP motion.

DISCUSSION

I.

*Relevant Legal Principles*

The trial court resolved Powers's motion at the first step of the anti-SLAPP process. "In the first step, the court is tasked with determining whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from protected activity.' " (*Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 443 (*Gerbosi*).) "[T]he moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*).)

13

" 'The only means specified in section 425.16 by which a moving defendant can satisfy the ["arising from"] requirement is to demonstrate that the *defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in subdivision (e)[.]' " (*Park, supra*, 2 Cal.5th at p. 1063.) "Only if the defendant makes this prima facie showing does the trial court consider the second step of the section 425.16, subdivision (b)(1) analysis[.]" (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 314 (*Flatley*).)

"A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra*, 2 Cal.5th at p. 1062.) Thus, "[a] 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.' " (*Wilson, supra*, 7 Cal.5th at p. 884.) At the first step of the anti-SLAPP analysis, "the focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' " (*Park*, at p. 1063.)

We review an order denying an anti-SLAPP motion de novo. (*Soukup, supra*, 39 Cal.4th at p. 269, fn. 3.) As a result, we "employ the same two-step procedure as did the trial court" in determining whether Powers's anti-SLAPP motion was properly denied. (*Gerbosi, supra*, 193 Cal.App.4th at p. 444.)

14

## II.

*The Trial Court Correctly Determined That Powers Failed to Meet His Threshold Burden as an Anti-SLAPP Movant*

Powers contends the trial court erred in concluding that he failed to meet his initial burden of demonstrating the claims against him arose from his acts of protected speech. We disagree.

To meet his threshold burden, Powers was required to establish that the conduct alleged against him fell within one of the four categories in section 425.16, subdivision (e). (*Park, supra*, 2 Cal.5th at p. 1063.) Powers's brief in support of his motion failed to invoke any of these categories. The trial court reasonably concluded from the notice of motion that Powers was proceeding under subdivision (e)(3) of section 425.16.

However, Powers did not present any argument explaining how the conduct alleged against him qualified as an act of protected speech within the meaning of this or any other subdivision (e) category. As the trial court correctly observed, the complaint alleged that Murray had been defamed and injured by Eva-Zacchara's acts of altering the official police report relating to the incident on August 8 and then referring to the altered report in communications to Murray's friends and acquaintances. The complaint alleged Powers substantially assisted Eva-Zacchara in these harmful acts.

Powers never argued or explained how this alleged conduct was protected by the anti-SLAPP statute. He simply failed to grapple with the complaint's actual allegations. Instead, he chose to portray the complaint as though its claims were based on his phone calls *to* the police, or false statements made during those calls. Neither of these positions accurately reflected the allegedly harmful conduct for which he was being sued. The trial court correctly concluded Powers could not meet his initial anti-SLAPP

15

burden by mischaracterizing the claims against him. (See, e.g., *Central Valley Hospitalists v. Dignity Health* (2018) 19 Cal.App.5th 203, 217–218 [rejecting defendant's unfounded claim it was being sued for peer review activities protected by the anti-SLAPP statute where peer review was "expressly excluded . . . from the complaint"]; *Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 883 [stating that "the act or acts underlying a claim for purposes of an anti-SLAPP *statute is determined from the plaintiffs' allegations*"; the court does not engage in "what would amount to a redrafting of [a] complaint in order to read that document as alleging conduct that supports a claim *that has not in fact been specifically alleged*"]; *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2006) 136 Cal.App.4th 464, 476 [on an anti-SLAPP motion, the court "must take the complaint as it is"].)

Powers offers several reasons why the trial court erred in concluding he failed to meet his initial burden as an anti-SLAPP movant. We find none has merit.

A. *The Trial Court Did Not Err by Failing to Conclude Powers's Conduct Was Protected Under Subdivisions (e)(1) and (e)(2)*

First, Powers argues the complaint "alleges that [he] had two communications with the Oceanside Police Department," which are "unquestionably protected activity." Powers does not expressly indicate which category of subdivision (e) affords this protection. From a parenthetical description in a case citation in the relevant section of his opening brief, and from an assertion elsewhere in the same brief, we glean that Powers contends these communications fall within subdivisions (e)(1) or (e)(2) of section 425.16. (See § 425.16, subds. (e)(1) ["any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law"], (e)(2) ["any

16

written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law"].)

Powers fails to demonstrate reversible error. At the outset, he has forfeited reliance on subdivisions (e)(1) and (e)(2) on appeal, because he failed to invoke those provisions in the trial court. (*Flatley*, *supra*, 39 Cal.4th at p. 321, fn. 10 [defendant forfeited reliance on subdivision (e)(2) on appeal by relying only on other subdivisions in trial court].)

His argument also lacks merit. While the complaint does refer to his communications with the police on August 8 and August 29, these allegations appear as factual background and do not serve as the basis for the claims against him. (*Wilson*, *supra*, 7 Cal.5th at p. 884 ["A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.' "]; *Park*, *supra*, 2 Cal.5th at p. 1064 [noting the "distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim"].)

In his reply brief, Powers argues that without his August 8 and August 29 phone calls to the police, there would have been no " 'true police report,' " and "you cannot have a 'forged' police report without there being a 'true police report.' " He further contends that under *Baral*, *supra*, 1 Cal.5th at page 395, when relief is sought based on protected and unprotected activity, the court must disregard the unprotected activity at the first stage of the anti-SLAPP analysis. Essentially, Powers argues that under *Baral*, the allegations that he helped alter a police report should be ignored, and the allegations he

17

called the police should be credited, in determining whether he met his first-step burden.

Powers misapprehends *Baral*. *Baral*, unlike this case, involved mixed causes of action seeking relief based on protected and unprotected activities. (*Baral*, *supra*, 1 Cal.5th at p. 385.) In such a case, our high court explained, "[a]t the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage." (*Id.* at p. 396.) Here, by contrast, the complaint specifies that Murray's injuries arose from Eva-Zacchara's "false accusations and use of the forged police report to support her slanderous story," and asserts that this was the injurious conduct in which Powers participated. Although it alleges as factual background that Powers called the police on August 8 and August 29, these communications are not alleged to have been defamatory. Accordingly, the causes of action against Powers are not "mixed," and the holding of *Baral* does not apply.

As for Powers's argument that "you cannot have a 'forged' police report without there being a 'true police report,' " his logic strains credulity. Because he cites no legal authorities that have adopted such an attenuated approach, we decline to consider the point further. (*In re S.C.* (2006) 138 Cal.App.4th 396, 408 ["When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' "].)

B.      *The Trial Court Did Not Err by Failing to Conclude Powers's Conduct Was Protected Under Subdivision (e)(3)*

Next, Powers argues that the altered police report and emails to others about the altered report were communications about domestic violence, "an issue of public interest" within the meaning of section 425.16, subdivision

(e)(3) and *Sipple v. Foundation for National Progress* (1999) 71 Cal.App.4th 226 (*Sipple*).

Murray contends this argument is waived because it was not advanced in the trial court. We agree. Although Powers's notice of motion, liberally construed, appeared to invoke subdivision (e)(3), he did not argue in his memorandum of points and authorities in support of the anti-SLAPP motion that the altered report and related emails were protected speech because they dealt with domestic violence or any other issues of public interest. He may not present this theory for the first time on appeal. (*Bikkina v. Mahadevan* (2015) 241 Cal.App.4th 70, 92 (*Bikkina*) ["A defendant appealing a special motion to strike may not change his theory of the case for the first time on appeal."].)

Powers responds that under *Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1245, an appellate court may consider new legal theories on appeal. While it is true appellate courts have discretion to consider forfeited arguments that raise pure questions of law, they are not required to do so. (*Wittenberg v. Bornstein* (2020) 51 Cal.App.5th 556, 567.) Powers offers no persuasive reason for overlooking his forfeiture. (See *ibid.* [noting that "courts are more inclined to consider new legal issues on appeal where the public interest or public policy is involved"].)

And even if not forfeited, the argument lacks merit. Murray's claims against Powers are a world away from the claims asserted in *Sipple*. In *Sipple*, a nationally known political consultant sued Mother Jones magazine for publishing an allegedly defamatory article that discussed court proceedings concerning his abusive treatment of previous wives. (*Sipple*, *supra*, 71 Cal.App.4th at pp. 230–234.) The article presented the theme "that rich and powerful men may use the legal system to their advantage over

19

women who may have been abused by them[.]" (*Id.* at p. 239.) The appellate court concluded the article was protected under section 425.16, subdivision (e)(3), because "the details of appellant's career and [his] ability to capitalize on domestic violence issues in his advertising campaigns for politicians around the world, while allegedly committing violence against his former wives, are public issues[.]" (*Sipple*, at pp. 239–240.)

In contrast, Murray and Eva-Zacchara are not, so far as the record reveals, public figures. Powers's alleged role in assisting Eva-Zacchara in altering an official police report to make it appear as though Murray was suspected of assault and abduction, if true, was part of a private dispute. The emails to Murray's acquaintances were not part of a larger public conversation about issues of public concern. (See, e.g., *Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, 118 [holding that "where the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging participation in matters of public significance"].) Although these communications may have been significant to the specific individuals involved, they were not matters of public interest.

Instead, this case is more like *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122 (*Weinberg*), on which Murray relies. In *Weinberg*, a token collector was sued for falsely accusing his rival of theft in communications to a group of fellow token collectors. The court rejected the defendant's argument that his accusations were protected because they related to an issue of public interest. The court reasoned that "a matter of concern to the

speaker and a relatively small, specific audience is not a matter of public interest." (*Id.* at p. 1132.) That description applies equally to the communications at issue in this case.

Powers argues the decision in *Weinberg* was driven by the fact that the defendant in that case did not report the alleged crime to law enforcement, something that did occur here. We disagree with Powers's reading of *Weinberg*. While the appellate court did discuss the defendant's failure to report the alleged crime, it did so in disposing of the defendant's argument that "criminal activity is always a matter of public interest." (*Weinberg, supra*, 110 Cal.App.4th at pp. 1134–1135.) The remainder of the opinion made clear the court's decision was substantially based on its view that the defendant's "campaign of vilification" against the plaintiff was a personal matter that was not "anything other than a private dispute between private parties." (*Id.* at pp. 1133–1136.) Thus, *Weinberg* is persuasive despite the one difference Powers identifies.

Moreover, in addition to requiring "an issue of public interest," subdivision (e)(3) also requires a "public forum," an element Powers fails to address in his opening brief on appeal. (See § 425.16, subd. (e)(3) [providing that protected speech includes "any written or oral statement or writing made *in a place open to the public or a public forum* in connection with an issue of public interest," (italics added)].) In his reply brief, Powers argues for the first time in this case that the "email blast" Eva-Zacchara sent in August 2018 satisfies the "public forum" requirement because it was an Instagram "posting," which he claims is an internet message board " 'open to the public.' "

We reject this newfound theory. Not only has it been forfeited, since it was not offered in the trial court or presented in his opening brief on appeal

21

(see *Bikkina*, *supra*, 241 Cal.App.4th at p. 92 [argument not presented in trial court forfeited on appeal]; *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 666, 684–685, [appellant forfeited challenges to trial court's striking of two claims under anti-SLAPP statute by failing to address claims in opening brief, despite belated attempt to address them in reply brief]), it is also factually unsupported.  Although there is some indication in the record Eva-Zacchara sent her "email blast" message to around 30 people via Instagram, Powers does not cite, and we do not find, any record evidence indicating the message was publicly posted.

C.  *The Trial Court Did Not Err by Failing to Conclude Powers's Conduct Was Protected Under Subdivision (e)(4)*

Next, Powers argues his allegedly defamatory acts are protected under subdivision (e)(4) of section 425.16.  (See § 425.16, subd. (e)(4) [providing that protected speech includes "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest"].)  He maintains that *Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534, 1546 (*Terry*), which held that "private conversations about public issues" are protected under subdivision (e)(4), supports this conclusion.

Once again, however, Powers has forfeited this argument.  His trial court motion was devoid of any citation to subdivision (e)(4), and it failed to present any argument based on *Terry*.  (*Flatley*, *supra*, 39 Cal.4th at p. 321, fn. 10; *Bikkina*, *supra*, 241 Cal.App.4th at p. 92.)

Even if this argument had not been forfeited, we would reject it.  Powers's reliance on *Terry* is misplaced.  *Terry* involved a defamation suit arising from a church report about a youth group leader who had a "secretive and inappropriate relationship" with one of the youth group's minor members.  (*Terry*, *supra*, 131 Cal.App.4th at p. 1548.)  The report was

discussed in church meetings with concerned parents who claimed they had a right to know about the investigation. (*Id.* at p. 1543.) The Court of Appeal held these "communications clearly involved issues of public interest, because they involved the societal interest in protecting a substantial number of children from predators[.]" (*Id.* at p. 1547.)

Simply put, this case is not *Terry*. Eva-Zacchara's version of the police report, doctored to reflect that an assault had been substantiated when it had not, is not comparable to the legitimate church report at issue in *Terry*. Nor was the "email blast" in which Eva-Zacchara complained about Murray to mutual acquaintances anything like the meetings in *Terry* in which concerned parents discussed how to protect "a substantial number of children from predators." (*Terry*, *supra*, 131 Cal.App.4th at p. 1547.) We have reviewed the additional authorities cited in Powers's reply brief and conclude they are likewise distinguishable. (See, e.g., *Cross v. Cooper* (2011) 197 Cal.App.4th 357, 382 [disclosure about the location of a registered sex offender residing in a neighborhood implicated the protection of "people, especially children, from sexual offenders . . . issues that would be of interest to most people"].) It follows that Powers's role in assisting Eva-Zacchara in making these defamatory communications did not involve a societal interest and did not fall within subdivision (e)(4).

D. *The Trial Court Was Not Required to Determine Whether the Alleged "Forgery" Was Conceded or Established Conclusively*

Finally, Powers argues the trial court erred in denying his motion based on the complaint's allegation he assisted in "forging" or altering a police report. He points to his declaration in which he denied altering the report or assisting Eva-Zacchara in doing so. He argues it was error for the trial court to conclude he had engaged in speech activity that was illegal when the illegality was not uncontested.

Powers misapprehends the relevant rule. True, there is a line of decisions in which courts have held anti-SLAPP protections are unavailable to defendants whose exercise of free speech rights involved conduct that was illegal as a matter of law. For example, in *Flatley*, *supra*, 39 Cal.4th 299, an attorney who threatened to sue and expose a celebrity for alleged rape unless the celebrity paid a seven-figure settlement was held to be precluded from relying on the anti-SLAPP law to strike the celebrity's subsequent claims against him, because the attorney's communications to the celebrity were extortionate as a matter of law. (*Flatley*, at pp. 311–320, 325–333.) Under *Flatley* and its progeny, a plaintiff can defeat an anti-SLAPP motion only by establishing conclusively that the protected speech activity was illegal. (*Id.* at p. 320 [holding a defendant may not use the anti-SLAPP statute to strike a plaintiff's action where "the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law"]; see also, e.g., *Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1480 (*Zucchet*) [plaintiff sued defendant for testifying falsely in a criminal proceeding against plaintiff; defendant met his first-prong anti-SLAPP burden by showing the claim was "based on [defendant's] activities in furtherance of his right to free speech or petition, *and* [it was] not the rare case in which the illegality of those activities [was] uncontested or conclusively established," (italics added)]; *Dwight R. v. Christy B.* (2013) 212 Cal.App.4th 697, 710–712 [affirming order striking a complaint as a SLAPP where the allegedly defamatory act was falsely reporting child molestation to child protective services, an activity protected under section 425.16, subdivision (e)(2), and there was no uncontroverted evidence the defendant's acts were unlawful as a matter of law].)

What Powers fails to recognize, however, is that this rule applies only where the assertedly illegal activity *is otherwise protected by the anti-SLAPP statute.* (*Flatley, supra,* 39 Cal.4th at p. 317 ["section 425.16 cannot be invoked by a defendant whose assertedly protected activity is illegal as a matter of law and, *for that reason,* not protected by constitutional guarantees of free speech and petition," (italics added)]; *Zucchet, supra,* 229 Cal.App.4th at p. 1480 [defendant met his first-prong anti-SLAPP burden by showing the claim was "based on [defendant's] activities in furtherance of his right to free speech or petition, *and* [it was] not the rare case in which the illegality of those activities [was] uncontested or conclusively established," (italics added)].) Here, Powers never managed to establish that the activities giving rise to the claims against him fell within subdivision (e) of section 425.16. The trial court denied his motion because he failed to show his allegedly injurious speech activities were *protected,* not because they were *illegal.* The analysis required by *Flatley* and progeny never came into play.[6]

Finally, we note that in his reply brief on appeal, Powers argues that *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 305, 308 (*Fox*) "effectively addressed and dismissed Murray's argument" that Powers "does not have a First Amendment right to forge a police report[.]" *Fox,* which involved a suit against a former in-house attorney for allegedly divulging confidential information when consulting with her own lawyers about filing an employment discrimination lawsuit, held no such thing. In the parts of the opinion on which Powers relies, the Court of Appeal rejected

---

[6]     At oral argument, Powers's counsel emphasized that Powers denies there is a forged police report or that he participated in forging any such report. However, "[a] showing that a defendant did not do an alleged activity is not a showing that the alleged activity is a protected activity." (*Gerbosi, supra,* 193 Cal.App.4th at p. 446.)

the former employer's argument that the SLAPP statute did not apply to lawsuits filed to protect confidential or privileged information. (*Id.* at pp. 304, 305, 308.) *Fox* contains no discussion about police reports or about alteration of official reports of any kind. Thus, *Fox* does not help Powers.

For all of the reasons we have discussed, we agree with the trial court that Powers failed to make the threshold showing required to support an anti-SLAPP motion to strike.

## DISPOSITION

The trial court's order denying the special motion to strike is affirmed. Murray is entitled to his costs on appeal. (Cal. Rules of Court, rule 8.278(a) (1) & (2).)

DO, J.

WE CONCUR:


McCONNELL, P. J.


HALLER, J.