Filed 3/3/26  Rahman v. Ayoubi CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MOHAMMED REZMAR RAHMAN,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MOHAMMAD JOHN AYOUBI,<br><br>Defendant and Appellant. | B341516<br>(Los Angeles County Super. Ct. No. 24WHRO00511) |

APPEAL from an order of the Superior Court of Los Angeles County, Kelly D. Boyer, Judge. Affirmed.

Krane & Smith and Daniel L. Reback for Defendant and Appellant.

The Westmoreland Law Firm, Dominique N. Westmoreland and Yesha H. Patel for Plaintiff and Respondent.

Defendant and appellant Mohammad John Ayoubi (appellant) appeals from the order denying his special motion to strike pursuant to Code of Civil Procedure section 425.16 (anti-SLAPP motion) against plaintiff and respondent Mohammed Rezmar Rahman (respondent). Appellant contends the trial court mistakenly applied the *Flatley* rule[1] and found respondent had a probability of prevailing on his petition. We conclude sufficient evidence shows respondent had a probability of prevailing on the merits of his claim despite the incorrect application of the *Flatley* rule. Thus, we affirm.

## BACKGROUND

### The petition

Respondent is 75 years old and the founder and president of the La Mirada Masjid Mosque in La Mirada, California. Appellant, whom respondent has known for over 20 years, was an attendee at the mosque. Over the years, respondent and appellant had strong disagreements over the mosque's policies that eventually led to appellant's protests against respondent and the mosque's leadership.

On March 13, 2024, respondent filed a request for elder or dependent adult abuse restraining order against appellant. The petition included a declaration in which respondent describes events of March 2024. Respondent maintained appellant arrived at the mosque on March 12, 2024, around 8:20 p.m. and began shouting at respondent, insulting him, engaging in intimidation, and accusing him of corruption. Appellant used a bullhorn to shout slogans and chants that disrupted the entire Muslim

---

[1]    *Flatley v. Mauro* (2006) 39 Cal.4th 299 (*Flatley*).

2

congregation prayer services. Most of the attendees went outside and asked appellant to leave. Some attendees left the prayer services due to this disturbance. Respondent called the sheriff and appellant left when the deputy arrived. The deputy filed an incident report and advised respondent to go to court for a restraining order.

Respondent averred appellant had obstructed prayer services and engaged in vile attacks and harassment against him earlier when the holy month of Ramadan began on March 10, 2024. To obstruct prayer services, appellant showed up daily at the mosque at 8:20 p.m., stood at the entrance, and yelled with a bullhorn for about an hour. Respondent claimed appellant's harassing conduct was recurring and continuing. Further, respondent alleged he was involved in a prior violent incident in the workplace with appellant in 2021 (21STRO03729).[2] Respondent maintained he was afraid for his and his family's safety and expressed stress from the unnecessary abuse.

Respondent requested the court to order appellant to stay at least 100 yards away from him, his family, and the mosque. On March 14, 2024, the trial court granted a temporary restraining order and set it to expire at the end of the hearing scheduled on April 3, 2024. Respondent's subsequent request to continue the hearing, was granted by the court. The hearing was rescheduled to May 8, 2024, and the restraining order was extended to that date.

On May 8, 2024, appellant informed the trial court he planned to file a motion and requested the court continue the

---

[2]     Respondent sought a temporary restraining order against appellant in July 2021 in this matter. The request was denied after a hearing.

3

hearing on the petition. The court granted appellant's request and rescheduled the hearing to July 9, 2024. On the same day, appellant filed an anti-SLAPP motion to the petition for restraining order.

**The anti-SLAPP motion**

In the anti-SLAPP motion, appellant contended the petition for restraining order arose from protected activity because it was based entirely on appellant's vocal criticisms of respondent and the mosque. Appellant argued he was simply airing his grievances and respondent sought to silence him. Appellant asserted respondent tried to restrict his free speech in July 2021 in a prior case, 21STRO03729, by seeking a workplace violence prevention restraining order, which was denied after a hearing on the merits. Appellant maintained respondent could not demonstrate a probability of prevailing on the merits of his claim because the allegations do not show any physical abuse, neglect, financial abuse, abandonment, or isolation under Welfare and Institutions Code section 15610.07, subdivision (a). Appellant also posited there was no evidence showing how his speech caused mental suffering to respondent.

In opposition, respondent contended appellant's conduct was not protected under *Flatley, supra*, 39 Cal.4th 299 because appellant made death threats, which are illegal under Penal Code section 422.[3] Respondent argued appellant also obstructed religious services, which is illegal under section 302. Further, respondent asserted the mosque was not a public forum and appellant's speech did not concern a public interest. Respondent

---

[3] All undesignated statutory references are to the Penal Code.

4

maintained he could show a probability of prevailing on the merits because appellant made credible threats of violence and damaged respondent's vehicle with a wooden sign, which caused him stress and fear for his safety. Respondent indicated appellant harassed him and subsequently violated the temporary restraining order that was in effect.

**The trial court's ruling**

The trial court issued its ruling on August 12, 2024, denying the anti-SLAPP motion. The court found appellant made threats of death and bodily harm against respondent. The court also found appellant struck respondent's vehicle with a wooden sign. The court concluded this speech and conduct were not protected under the anti-SLAPP statute because the actions violated section 422 and were illegal as a matter of law.

The trial court went on to find, even if the conduct was protected, there was sufficient evidence establishing respondent had a probability of prevailing on the merits of the claim. The court found the allegations in respondent's declaration amounted to a criminal threat in violation of section 422, and there was evidence appellant's conduct caused mental suffering to respondent as he was in fear for his life and safety and had to seek medical treatment. The court noted respondent needed only to make a minimal showing of the claim's merits to oppose the anti-SLAPP motion.

Appellant timely appealed.

## CONTENTIONS ON APPEAL

Appellant asserts three main arguments. First, appellant contends the trial court erred in finding his conduct was unprotected because it was not illegal as a matter of law. Second,

5

appellant argues the court erroneously found respondent showed a probability of prevailing on the merits on his elder abuse claim. Finally, appellant asserts the court erred by failing to apply the severance methodology required by *Baral v. Schnitt* (2016) 1 Cal.5th 376 (*Baral*).

## DISCUSSION

### I. Standard of review and applicable law

""""We review de novo a ruling on a special motion to strike under [Code of Civil Procedure] section 425.16. [Citation.] Thus, we apply our independent judgment, both to the issue of whether the cause of action arises from a protected activity and whether the plaintiff has shown a probability of prevailing on the claim."""" (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 671 (*Balla*).) "An appellant still bears the ""burden of affirmatively demonstrating error."""" (*Ibid.*)

"In evaluating an anti-SLAPP motion, courts conduct a two-step analysis. First, the court decides whether a defendant has met its 'burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.'" (*Manlin v. Milner* (2022) 82 Cal.App.5th 1004, 1017–1018 (*Manlin*).) "For these purposes, protected activity 'includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public

6

interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.' (§ 425.16, subd. (e).)" (*Id*. at p. 1018.)

"Second, if a defendant meets its burden on the threshold showing, the court decides if the plaintiff 'has established that there is a probability that the plaintiff will prevail on the claim.' (§ 425.16, subd. (b)(1).)" (*Manlin, supra*, 82 Cal.App.5th at p. 1018.) "To satisfy this burden, the plaintiff "'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.""" (*Ibid*.) "At the second step, the court's 'inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citations.] "[C]laims with the requisite minimal merit may proceed.""" (*Balla, supra*, 59 Cal.App.5th at p. 671.)

"'Analysis of an anti-SLAPP motion is not confined to evaluating whether an entire cause of action, as pleaded by the plaintiff, arises from protected activity or has merit. Instead, courts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion.'" (*Manlin, supra*, 82 Cal.App.5th at p. 1018.) "'[T]o the extent any acts are unprotected, the claims based on those acts will survive.'" (*Ibid*.)

**II.** **The anti-SLAPP motion was not erroneously denied despite *Flatley*'s inapplicability because the evidence shows respondent has a probability of prevailing on his claim**

   **A.** ***The alleged conduct is not illegal as a matter of law***

Appellant asserts the conduct alleged is protected activity and does not fall within the *Flatley* rule because the conduct is not illegal as a matter of law. We agree.

Under the *Flatley* rule, "where a defendant brings a motion to strike under [Code of Civil Procedure] section 425.16 based on a claim that the plaintiff's action arises from activity by the defendant in furtherance of the defendant's exercise of protected speech or petition rights, but either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Flatley, supra*, 39 Cal.4th at p. 320.)

Our Supreme Court "made it clear in *Flatley* that conduct must be illegal *as a matter of law* to defeat a defendant's showing of protected activity. The defendant must concede the point, or the evidence conclusively demonstrate it, for a claim of illegality to defeat an anti-SLAPP motion at the first step." (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 424.) "[T]he Supreme Court's use of the phrase 'illegal' was intended to mean criminal, and not merely violative of a statute." (*Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1654.)

8

"Our Supreme Court has emphasized that the exception for illegal activity is very narrow and applies only in undisputed cases of illegality." (*Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1478.) For example, "[t]he rare cases in which the exception for illegal conduct has been applied include (1) a case in which the plaintiff obtained a finding of factual innocence, which conclusively established that the defendant made a false police report, and the defendant did not contest that fact (*Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696, 703) and (2) a case in which the defendant conceded that its acts of vandalism in support of animal rights issues were unlawful (*Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2006) 143 Cal.App.4th 1284, 1296). In contrast, courts deny anti-SLAPP motions when it is not conclusively established or conceded that unlawful protected activity occurred." (*Id.* at pp. 1478–1479.)

Here, the only evidence showing appellant engaged in criminal threats in violation of section 422 is a declaration submitted by respondent in which he attested appellant threatened to kill and cause bodily harm to respondent and his family.[4] Nothing in the record shows appellant ever conceded to

---

[4] Respondent contends appellant's conduct was also illegal under section 302, subdivision (a), which prohibits "intentionally disturb[ing] or disquiet[ing] any assemblage of people met for religious worship at a tax-exempt place of worship, by profane discourse, rude or indecent behavior, or by any unnecessary noise . . . ." While the trial court ultimately did not base its order on section 302, nothing in the record shows appellant was guilty of violating this statute as a matter of law. Appellant maintained he engaged in peaceful protests and disputed taking part in any wrongful acts disrupting the religious services at the mosque.

making such criminal threats. Indeed, appellant entirely disputed the allegation he threatened anyone associated with the mosque or caused vandalism. Further, the record does not show there was ever any legal finding or criminal conviction establishing appellant was guilty of criminal conduct. Accordingly, there is nothing to conclusively establish appellant engaged in illegal conduct, in this entirely disputed matter. Therefore, appellant's conduct is protected under the anti-SLAPP statute as the narrow *Flatley* exception is not applicable here.

While appellant's conduct is protected given *Flatley*'s inapplicability, the anti-SLAPP motion was nevertheless properly denied because respondent satisfied the second prong of the analysis: sufficiently demonstrating respondent has a probability of prevailing on the merits of his claim.

**B.** ***The evidence shows respondent has a probability of prevailing on his claim***

Appellant argues the trial court erred in finding the second prong of the anti-SLAPP analysis was satisfied because it erroneously considered respondent's new allegations of criminal threat and his probability of prevailing on a claim under section 422. Further, appellant maintains respondent's evidence is insufficient to show the alleged conduct caused "mental suffering" and is otherwise too vague to make a prima facie showing of elder abuse.

"The Legislature enacted the Elder Abuse Act 'to protect elders by providing enhanced remedies which encourage private, civil enforcement of laws against elder abuse and neglect.'" (*Arace*

There is no legal finding or criminal conviction establishing appellant was guilty of violating this statute.

10

*v. Medico Investments, LLC* (2020) 48 Cal.App.5th 977, 981.) Welfare and Institutions Code section 15610.07, subdivision (a)(1), states in relevant part: " 'Abuse of an elder or a dependent adult' means . . . [¶] . . . Physical abuse, neglect, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering." "An 'elder' is defined as a California resident, age 65 years or older. ([Welf. & Inst. Code,] § 15610.27.)" (*Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131, 1141.)

"The Elder Abuse Act defines 'abuse' broadly, including not only physical abuse, neglect, abandonment, isolation or abduction of a person age 65 or older, but also 'other treatment,' if that treatment results in 'physical harm or pain or mental suffering' to the elder. ([Welf. & Inst. Code,] § 15610.07, subd. (a)(1).)" (*Darrin v. Miller* (2019) 32 Cal.App.5th 450, 454; see *Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 526–527 [noting elder abuse is defined, among other things, as *any* treatment resulting in mental suffering].) "[U]nder [Welfare and Institutions Code] section 15610.07, subdivision (a)(1), 'treatment' that is neither physical abuse, neglect, abandonment, isolation nor abduction, can constitute elder abuse if the treatment results in 'physical harm or pain or mental suffering' even if the alleged abuser has no responsibility to care for the elder and no control of the elder's property." (*Darrin, supra*, at p. 456.) " 'Mental suffering' means fear, agitation, confusion, severe depression, or other forms of serious emotional distress that is brought about by forms of intimidating behavior, threats, [or] harassment . . . ." (Welf. & Inst. Code, § 15610.53.)

"An elder or dependent adult who has suffered abuse, as defined in Section 15610.07, may seek protective orders . . . ."

11

(Welf. & Inst. Code, § 15657.03, subd. (a)(1).) Such "protective order" includes a restraining order enjoining a party from abusing, intimidating, molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, or telephoning the petitioner. (*Id.*, § 15657.03, subd. (b)(5)(A).)

We conclude respondent's claim meets the requisite minimal merit to satisfy the second prong of the anti-SLAPP analysis. Respondent presented evidence making a prima facie showing of abusive "treatment" under the Elder Abuse Act. Respondent attested, beginning on March 10, 2024, appellant regularly obstructed the mosque's prayer services by yelling through a bullhorn at the entrance of the facility and engaging in "vile attack and harassment" against respondent. Respondent stated appellant used the bullhorn to shout at him and make loud noises to intimidate him. Respondent maintained appellant's acts of harassment were recurring. Respondent presented evidence showing appellant's harassment included threatening respondent and intentionally blocking the driveway into the mosque. Respondent claims he called the police for help on March 12, 2024, after appellant arrived at the mosque again around 8:20 p.m. Respondent attested a deputy came, filed a report, and advised him to contact the court for a restraining order. Respondent averred this harassment continued afterwards, with incidents against him and other mosque attendees as recently as June 2024, violating the temporary restraining order in place.[5]

---

[5] Appellant posits the trial court erred because it overlooked his detailed declaration that denied all of threats, assault, and vehicle damage allegations. However, in determining the second prong of the anti-SLAPP analysis, "we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only

12

Further, respondent submitted evidence showing the treatment resulted in his "mental suffering." Respondent attested he feared for the safety of himself and his family and underwent stress from appellant's unnecessary abuse. On multiple occasions, respondent asked Robert "Bob" Arellano, a retired peace officer for the Los Angeles Police Department, to determine whether appellant was on the mosque property and if it was safe for respondent to go outside the facility. Arellano escorted respondent to and from his vehicle to protect him from appellant. These facts meet the definition of "mental suffering" under Welfare and Institutions Code section 15610.53, as the evidence shows appellant mentally suffered from stress, anxiety, and fear for his safety caused by appellant's alleged harassing conduct and intimidating behavior.[6]

---

to determine if it defeats the plaintiff's submission as a matter of law." (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699–700.) "We do not weigh credibility, nor do we evaluate the weight of the evidence." (*Id.* at p. 699.) Hence, the mere fact appellant made statements disputing respondent's evidence is insufficient to show the second prong is not met.

[6] Appellant contends the trial court erroneously relied on respondent's evidence regarding death threats and damages to his vehicle because these facts were not in the petition. "[T]he issues in an anti-SLAPP motion are framed by the pleadings." (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 672.) "Thus, the act or acts underlying a claim for purposes of an anti-SLAPP statute *is determined from the plaintiffs' allegations.*" (*Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 883.) Even assuming arguendo the death threats and vehicle damage allegations are outside the scope of the petition, this is not dispositive because respondent's remaining facts and evidence discussed herein sufficiently

13

As discussed above, the Elder Abuse Act broadly defines "abuse" to include any "treatment" resulting in "mental suffering." (Welf. & Inst. Code, § 15610.07, subd. (a)(1).) While appellant focuses on the allegations he engaged in criminal threats and property damage, the statute encompasses "intimidating behavior" and "harassment" causing "fear, agitation, . . . or other forms of serious emotional distress." (*Id.*, § 15610.53.) Respondent made the minimal showing that appellant's harassing and intimidating behavior caused respondent stress, anxiety, and fear for his and his family's safety. Nothing shows respondent's burden of proof was any greater to satisfy the second prong of the anti-SLAPP analysis in this matter.[7] Accordingly, we conclude the anti-SLAPP motion was properly denied.

---

support his claim. We note, while not specifically mentioned in the petition's attached declaration, respondent's evidence regarding appellant's general threats and blocking of the mosque's driveway is within the scope of the petition because such acts are examples of the alleged recurring harassment.

[7] Appellant argues respondent's 2021 failed petition for a temporary restraining order in the workplace violence matter, 21STRO03729, should have a preclusive effect under collateral estoppel principles because the allegations in that case were similar to those here. But [i]n order for issue preclusion to apply, . . . the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding." (*Williams v. Doctors Medical Center of Modesto, Inc.* (2024) 100 Cal.App.5th 1117, 1131.) Issue preclusion is inapposite here because nothing in the record shows the issues here are identical to those in 21STRO03729, which involved a different incident that occurred three years prior to this case. Appellant only asserts the

### C. *The issue as to severing allegations is moot*

Finally, appellant posits the trial court erred by failing to sever the protected activities from the unprotected ones as required under *Baral, supra,* 1 Cal.5th 376. Because respondent has shown a probability of prevailing on the merits of his claim, this issue is moot. Thus, we need not consider the severance issue here.

### DISPOSITION

The August 12, 2024 order denying the special motion to strike pursuant to section 425.16 is affirmed. Respondent is awarded his costs on appeal.

CHAVEZ, J.

We concur:

LUI, P. J.

SIGGINS, J.*

---

allegations in the two cases are similar, which does not establish they have identical issues.

\*      Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15